SYLLABUS

(This syllabus is not part of the opinion of the Court.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Supreme Court.  Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

### Brenda Ann Schwartz v. Accuratus Corporation (A-73-14) (076195)

**Argued April 25, 2016 -- Decided July 6, 2016**

**LaVECCHIA, J., writing for a unanimous Court.**

In this appeal, the Court considers the following question of law certified by the United States Court of Appeals for the Third Circuit:  Does the premises liability rule set forth in Olivo v. Owens-Illinois, Inc., 186 N.J. 394 (2006) extend beyond providing a duty of care to the spouse of a person exposed to toxic substances on the landowner's premises, and, if so, what are the limits on that liability rule and the associated scope of duty?

The action before the Third Circuit involves plaintiffs Brenda Ann and Paul Schwartz.  After Brenda was diagnosed with chronic beryllium disease, the Schwartzes filed a complaint raising claims of negligence, products liability, and strict liability against defendant Accuratus Ceramic Corporation (Accuratus), a ceramics facility where Paul had worked in 1978 and 1979.  In 1979, Paul began sharing an apartment with an Accuratus co-worker, Gregory Altemose.  At the time, Paul and Brenda were dating and Brenda frequently visited and stayed overnight at the apartment.  After the couple married in June 1980, Brenda and Paul resided in the apartment, where Altemose also continued to live.  Brenda performed laundry and other chores at the apartment, both when she stayed with Paul prior to their marriage and after she moved in as Paul's wife.

The complaint alleges that employees at Accuratus's facility were exposed to beryllium, which, according to plaintiffs, may result in cancer and other diseases of the lungs and skin.  Plaintiffs allege that Brenda was subjected to take-home beryllium exposure due to Paul and Altemose bringing the substance home from Accuratus on their work clothing.  Thus, plaintiffs' take-home-toxin theory of liability is based in part on Brenda's exposure to beryllium for the period that she frequently stayed over at the apartment prior to her marriage to Paul.  Additionally, the take-home-toxin theory encompasses the time period after the marriage, premised on the theory that Altemose continued to bring the substance home to the shared apartment from his work at the Accuratus facility.

Originally filed in Pennsylvania state court, plaintiffs' case was removed to the United States District Court for the Eastern District of Pennsylvania.  Plaintiffs' motion to remand was denied.  The federal district court concluded that "neither [New Jersey nor Pennsylvania] has recognized a duty of an employer to protect a worker's non-spouse . . . roommate from take-home exposure to a toxic substance."  The court pointed to Olivo v. Owens-Illinois, Inc., 186 N.J. 394 (2006) as support for that proposition.  The court denied plaintiffs' motion for reconsideration, commenting that to interpret Olivo as supporting a duty to Brenda would "stretch the New Jersey Supreme Court's decision . . . beyond its tensile strength."  After the Schwartzes filed an amended complaint, Accuratus filed a motion to dismiss, which was granted.  The federal district court concluded as a matter of law that Accuratus did not owe a duty of care to Brenda.

Following additional motion practice, the Schwartzes filed a notice of appeal with the Third Circuit.  The Third Circuit filed a Petition for Certification of a Question of State Law, pursuant to Rule 2:12A-1, which the Court accepted.  222 N.J. 304 (2015).

**HELD:**  The duty of care recognized in Olivo v. Owens-Illinois, Inc., 186 N.J. 394 (2006) may, in proper circumstances, extend beyond a spouse of a worker exposed to a workplace toxin that is the basis for a take-home toxic-tort theory of liability.

1. The threshold question certified by the Third Circuit -- whether the premises liability rule set forth in Olivo may extend beyond providing a duty of care to the spouse of a person exposed to toxic substances on the landowner's premises -- necessitates a review of Olivo and the reasoning that led to its holding.  In Olivo, the Court considered whether a landowner could be liable for injuries allegedly caused from asbestos exposure experienced by the wife of

a worker who had performed welding and steam fitting tasks that brought him into contact with asbestos on the landowner's premises. There, the Court explained "whether a duty of care can be owed to one who is injured from a dangerous condition on the premises, to which the victim is exposed off-premises, devolves to a question of foreseeability of the risk of harm to that individual or identifiable class of individuals." Id. at 403. Once foreseeability is established, a court must evaluate whether recognition of a duty accords with fairness, justness, and predictability, applying the following factors derived, in part, from Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993): (1) the relationship of the parties, namely the relationship between plaintiff and defendant; (2) the nature of the attendant risk, including the danger of the toxin at issue and how easily the toxin is transmitted and causes injury (the greater the danger, the greater the duty); (3) the opportunity and ability to exercise care; and (4) the public interest in the proposed solution. (pp. 7-9)

2. Based on the facts presented in Olivo's summary judgment record, the Court determined that the landowner should have foreseen that sending unprotected, soiled work clothes home on the backs of workers would result in their clothes being laundered. That placed the person, who could be expected to perform the task of handling and laundering the unprotected work clothing, in regular and close contact with material that had become infiltrated with asbestos in the worksite. As a result, the Court held that a duty of care to protect on-site workers from exposure to friable asbestos in the worksite extended to spouses "handling the workers' unprotected work clothing based on the foreseeable risk of exposure from asbestos borne home on [the workers'] contaminated clothing." Olivo, supra, 186 N.J. at 404-05 (emphasis added). Applying the Hopkins factors, the Court concluded that fairness and justness would be served by extending off-premises liability in that setting. (pp. 9-11)

3. In so holding, the Court determined that the landowner's concerns about essentially limitless liability were unfounded because the duty recognized under the circumstances of Olivo was "focused on the particularized foreseeability of harm to plaintiff's wife." Id. at 405. That concise statement cannot be taken out of its context -- a duty was found to exist based on the foreseeability of regular and close contact with the contaminated material over an extended period of time. Id. at 404-05. The duty of care for take-home toxic-tort liability discussed in Olivo was not defined by the role of lawfully wedded spouse to someone who worked on the landowner's premises. Rather, it was foreseeable that Eleanor (plaintiff's wife) would be handling and laundering the plaintiff's soiled, asbestos-exposed clothes, which the landowner failed to protect at work and allowed to be taken home by workers. That easily foreseeable, regular, and close contact with the dangerous condition produced the conclusion that the landowner could be held liable to Eleanor for her injuries. (pp. 11-13)

4. Tort law is built on case-by-case development based on the facts presented by individual cases. The evolution of case law must reflect the simultaneous evolution of societal values and public policy. Olivo does not suggest that the duty recognized must remain static for all future cases -- no matter the pleadings and proofs, including unknown aspects of other toxins -- and that take-home toxic-tort liability must remain limited to a spouse handling take-home toxins. Olivo does not state, explicitly or implicitly, that a duty of care for take-home toxic-tort liability cannot extend beyond a spouse. Nor does it base liability on some definition of "household" member, or even on the basis of biological or familial relationships. Olivo must be recognized as a step in the development of the common law, which of necessity is built case by case on individual factual circumstances. (pp. 13-16)

5. The Court cannot define the contours of the duty owed to others in a take-home toxic-tort action through a certified question of law. While there may be situations in which household members are in contact with toxins brought home on clothing, a refined analysis for particularized risk, foreseeability, and fairness requires a case-by-case assessment in toxic-tort settings. Although the Court cannot predict the direction in which the common law will evolve, the Court identifies certain factors that will be important as such cases present themselves. In sum, the duty of care recognized in Olivo may extend, in appropriate circumstances, to a plaintiff who is not a spouse. The assessment should take into account a weighing of the factors identified herein to determine whether the foreseeability, fairness, and predictability concerns of Hopkins should lead to the conclusion that a duty of care should be recognized under common law. (pp. 16-19)

**CHIEF JUSTICE RABNER; JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion.**

2

BRENDA ANN SCHWARTZ and PAUL
GRANT SCHWARTZ,

     Appellants-Appellants,

        v.

ACCURATUS CORPORATION, In Its
Own Right and as Successor in
Interest to Accuratus Ceramic
Corporation,

     Respondents-Respondents,

        and

MATERION BRUSH INC., C/O CT
Corporation System,

     Defendant.

        Argued April 25, 2016 – Decided July 6, 2016

        On certification of question of law from the United States Court of Appeals for the Third Circuit.

        Ruben Honik argued the cause for appellants (Golomb & Honik, attorneys).

        Joseph G. Harraka, Jr., argued the cause for respondents (Becker Meisel, attorneys; Mr. Harraka, David G. Tomeo, and A. Wesley Bridges, Jr., on the brief).

    JUSTICE LaVECCHIA delivered the opinion of the Court.

    This matter presents a question of law certified and submitted to this Court by the United States Court of Appeals

1

for the Third Circuit pursuant to Rule 2:12A-1.  The question

relates to this Court's earlier opinion in Olivo v. Owens-

Illinois, Inc., 186 N.J. 394 (2006).

The issue in Olivo was "whether a landowner can be liable

for injuries allegedly caused from asbestos exposure experienced

by the wife of a worker who had performed welding and steam

fitting tasks that brought him into contact with asbestos on the

landowner's premises."  Id. at 398-99.  Based on the facts as

presented in Olivo's summary judgment record and considerations

of fairness and justness, we recognized a duty owed to spouses

allegedly injured from "handling the workers' unprotected work

clothing[,] based on the foreseeable risk of exposure from

asbestos borne home on contaminated clothing."  Id. at 404-05.

The Third Circuit now asks:  "Does the premises liability

rule set forth in Olivo extend beyond providing a duty of care

to the spouse of a person exposed to toxic substances on the

landowner's premises, and, if so, what are the limits on that

liability rule and the associated scope of duty?"

I.

The action before the Third Circuit that led to the

certified question involves plaintiffs Brenda Ann and Paul

Schwartz, who are residents of Pennsylvania.  In September 2012,

a month after Brenda was diagnosed with chronic beryllium

2

disease,[1] the Schwartzes filed a complaint in Pennsylvania state court, raising claims of negligence, products liability, and strict liability.  The complaint named as a defendant Accuratus Ceramic Corporation (Accuratus), a ceramics facility located in Washington, Warren County, New Jersey, where Paul had worked in 1978 and 1979.  The allegations against Accuratus were based on a theory of take-home toxic-tort liability.  Paul's employment at Accuratus preceded the couple's marriage, but it encompassed a period when Brenda frequently stayed at Paul's residence, which he shared with another Accuratus co-worker, Gregory Altemose.

The facts to support the Schwartzes' take-home toxic-tort theory of liability can be summarized from the pleadings as follows.  In the spring of 1979, Paul began sharing an apartment in Pennsylvania with Altemose.  At the time, Paul and Brenda were dating and Brenda frequently visited and stayed overnight at the apartment with Paul.  After the couple married in June 1980, Brenda and Paul resided in the apartment, where Altemose also continued to live.[2]  Brenda performed laundry and other

---

[1] According to the complaint, chronic beryllium disease is an irreversible and largely untreatable disease affecting lung tissue that is caused by exposure to airborne beryllium particles.

[2] It is unclear how long Altemose lived with the Schwartzes after they were married.  The pleadings are silent on the matter.  The district court describes that the three lived together "for a

chores at the apartment, both when she stayed with Paul prior to their marriage and after she moved in as Paul's wife. She laundered her and Paul's clothing and towels, as well as the towels used by Altemose. She also cleaned her and Paul's parts of the apartment and common areas.

While Brenda and Paul dated but did not yet reside together on a full-time basis, Paul was employed as a machinist for Accuratus at its facility in Washington. Altemose, Paul's apartment mate, and later Brenda's as well, became employed at Accuratus's Washington facility in 1978, and his employment continued through the date of the filing of the complaint. In 1979, prior to Paul and Brenda's marriage, Paul became employed by co-defendant Materion Brush, Inc., where he worked from 1979 to 1987.

Importantly, for present purposes, the complaint alleges that employees at Accuratus's facility were exposed to manufacturing processes that included the production, casting, cutting, grinding, and cleaning of beryllium oxide ceramics and other materials containing beryllium.[3] According to plaintiffs,

_____

time"; the Third Circuit states that they lived together for "several years."

[3] Beryllium, the fourth element on the periodic table, is one of the lightest metals and has one of the highest melting points. Its properties lead to varied uses in industrial and manufacturing settings, including in ceramic applications. See

in industrial settings, any action that disturbs the surface layer of beryllium will produce particles that become suspended in the air and can be inhaled.  It is further alleged that exposure to beryllium may result in cancer and other diseases of the lungs and skin.  Plaintiffs contend that according to scientific literature, without proper industrial hygiene controls, beryllium dust produced by manufacturing activity can spread throughout a facility, be deposited on the clothing and shoes of workers, and then transported into employees' automobiles and homes.  Further, plaintiffs maintain that studies show that, once a home environment is contaminated with beryllium, ordinary household chores such as vacuuming and dusting can re-suspend beryllium particles, causing persons in the home to be repeatedly exposed to beryllium.

Plaintiffs allege that Brenda was subjected to take-home beryllium exposure due to Paul and Altemose bringing the substance home from Accuratus on their unprotected work clothing.  Thus plaintiffs' take-home-toxin theory of liability is based in part on Brenda's exposure to beryllium for the period that she frequently stayed over at the apartment prior to her marriage.  Additionally, the take-home-toxin theory as it pertains to defendant Accuratus encompasses the time period

---

Los Alamos Nat'l Lab., Periodic Table of Elements:  LANL, http://periodic.lanl.gov/4.shtml (last visited June 15, 2016).

after Brenda and Paul's marriage, premised on the theory that Altemose continued to bring the substance home to the shared apartment from his work at the Accuratus facility.

Originally filed in Pennsylvania state court, plaintiffs' case was removed to the United States District Court for the Eastern District of Pennsylvania. Plaintiffs' motion to remand was denied. In denying the motion to return the case to state court, the federal district court noted that the parties disputed whether New Jersey or Pennsylvania law applied to plaintiffs' claims, but concluded the dispute was not a matter of concern because "neither state has recognized a duty of an employer to protect a worker's non-spouse . . . roommate from take-home exposure to a toxic substance." The court pointed to Olivo as support for that proposition. The court denied plaintiffs' motion for reconsideration, again commenting that to interpret Olivo as supporting a duty to Brenda would "stretch the New Jersey Supreme Court's decision . . . beyond its tensile strength." The court added, concerning whether Altemose's employment could supply a liability link between Brenda and Accuratus, that "it is hard to imagine where the foreseeability link could ever be severed" if "New Jersey law [were to] find a foreseeable duty owed by an employee . . . to another employee's non-spouse visitor/co-habitant."

After the Schwartzes filed an amended complaint, and subsequent motion practice eliminated certain claims,[4] Accuratus filed a motion to dismiss, which was granted.  The court declared it "unreasonable to hold Accuratus to sharp enough foresight to realize that [Brenda] would later marry one of their employees."  The court concluded as a matter of law that Brenda was not owed a duty of care by Accuratus.

In April 2014, the Schwartzes sought to certify the duty-of-care question to the United States Court of Appeals for the Third Circuit for interlocutory appeal.  The motion was denied.  They then filed a motion to voluntarily dismiss all remaining claims in order to produce a final and appealable order.  That motion was granted.

On September 24, 2014, the Schwartzes filed a notice of appeal with the Third Circuit.  On June 22, 2015, the Third Circuit filed the instant Petition for Certification of a Question of State Law, which we accepted.  222 N.J. 304 (2015).

The first and threshold question certified by the Third Circuit -- whether the premises liability rule set forth in

---

[4] In addition to bringing claims against Accuratus, plaintiffs brought claims against Materion Brush and Dennis P. Tretter, a Pennsylvania citizen who was in charge of enforcing safety policies at Accuratus's Washington facility.  Materion Brush settled with plaintiffs before the appeal to the Third Circuit. Tretter was dismissed from the action by the federal district court.

_Olivo_ may extend beyond providing a duty of care to the spouse of a person who was exposed to toxic substances while on the landowner's premises -- necessitates a review of _Olivo_ and the reasoning that led to its holding.

II.

_Olivo_, _supra_, came to the Court on a record developed on a motion for summary judgment.  186 _N.J._ at 399.  That record presented the following facts.  Anthony Olivo had been a pipe welder for nearly forty years, during which he performed welding activities as an independent contractor at Exxon Mobil's refinery in Paulsboro, New Jersey.  _Ibid._  In the course of his work, Anthony was frequently in contact with asbestos-containing materials, including pipe covering and gaskets.  _Ibid._  At the end of each workday, Anthony would return home in his work clothes and leave them in the home's basement laundry area for his wife, Eleanor, who laundered the work clothes "during the evening of every workday."  _Ibid._  Eleanor was diagnosed with mesothelioma in 2000, and died shortly thereafter.  _Ibid._  Anthony brought a wrongful death action on behalf of his wife's estate.  _Id._ at 399-400.

In _Olivo_, we explained "whether a duty of care can be owed to one who is injured from a dangerous condition on the premises, to which the victim is exposed off-premises, devolves to a question of foreseeability of the risk of harm to that

8

individual or identifiable class of individuals." Id. at 403. In those types of cases, "[t]he risk reasonably to be perceived defines the duty to be obeyed; it is the risk reasonably within the range of apprehension, of injury to another person, that is taken into account in determining the existence of a duty." Ibid. (quoting Clohesy v. Food Circus Supermkts., Inc., 149 N.J. 496, 503 (1997)). Once foreseeability of risk to an injured person is established, a court also must evaluate factors that affect whether recognition of a duty accords with fairness, justness, and predictability. The following factors are applied in that evaluation: (1) the relationship of the parties, namely the relationship between plaintiff and defendant; (2) the nature of the attendant risk, including the danger of the toxin at issue and how easily the toxin is transmitted and causes injury (the greater the danger, the greater the duty); (3) the opportunity and ability to exercise care; and (4) the public interest in the proposed solution. See id. at 403-04 (referencing, for support, Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993)).

Applying the factors generated from the Hopkins analysis, we said in Olivo that "the risk of injury to someone like Eleanor Olivo is one that should have been foreseeable to Exxon Mobil." Id. at 404. In balancing the interests, we determined that the record provided evidence that Exxon had knowledge of

9

the hazard caused by friable asbestos as well as the nature or methods of exposure. See ibid. The record also disclosed the absence of any evidence that precautions had been undertaken by Exxon to ensure that there would not be take-home exposure from friable asbestos, notwithstanding that precautionary steps for employers to take were known within the industry. Ibid. We determined that Exxon should have foreseen that sending unprotected, soiled work clothes home on the backs of workers would result in their clothes being laundered, and that placed the person, who could be expected to perform the task of handling and laundering the unprotected work clothing, in regular and close contact with material that had become infiltrated with asbestos at Exxon's site. Ibid. We therefore held that a duty of care to protect on-site workers like Anthony from exposure to friable asbestos in the worksite extended to spouses "handling the workers' unprotected work clothing based on the foreseeable risk of exposure from asbestos borne home on [the workers'] contaminated clothing." Id. at 404-05 (emphasis added).

With regard to the Hopkins factors that address whether the foreseeability of an injured party should fairly lead to the imposition of a duty, we concluded that fairness and justness would be served by extending off-premises liability in the setting in Olivo. Id. at 405. The duty recognized in Olivo was

10

expressly built on <u>easily</u> foreseen contact with the dangerous substance that could have been avoided by Exxon's opportunity to take reasonable precautionary steps. <u>Id.</u> at 404. The danger from the toxin was known, and the steps to minimize the danger and avoid injury to a class of identifiable persons off-premises was viewed as not burdensome and in the public interest. <u>Id.</u> at 405.

We considered Exxon's concerns about essentially limitless liability to be unfounded because the holding in <u>Olivo</u> was confined to the facts of the case: "[t]he duty we recognize in these circumstances is focused on the particularized foreseeability of harm to plaintiff's wife." <u>Ibid.</u> Even that concise statement cannot be taken out of its context -- a duty was found to exist in <u>Olivo</u> based on the foreseeability of regular and close contact with the contaminated material (the dangerous condition) over an extended period of time. <u>Id.</u> at 404-05. That assessment led to the finding of a duty that could support Exxon's liability to Olivo's wife, Eleanor. <u>Ibid.</u> It was foreseeable that she would handle and launder her husband's soiled and contaminated clothes, which were allowed by Exxon to be taken home. <u>Id.</u> at 404. That reasonably predictable, regular and close contact with a dangerous toxin produced the conclusion that Exxon could be held liable to Eleanor for her injuries. <u>Id.</u> at 405.

11

III.

The Third Circuit now asks:  Does Olivo extend beyond providing a duty of care to the spouse of a person exposed to toxic substances on the landowner's premises; and if the duty does extend beyond spouses, what are the limits on that liability rule and the associated scope of duty?

Plaintiffs argue that Olivo should not be read as establishing a foreseeable duty only for spouses injured due to handling a take-home toxin.  Plaintiffs urge that no bright line should be drawn from Olivo's holding.  They emphasized at oral argument that facts such as regular cohabitation and the tasks that a cohabiting household member is likely to perform should weigh heavily in determining whether a foreseeable duty may exist.  They also acknowledged that the nature of the duty that may exist is dependent on the nature of the toxin involved.

Accuratus argues against adoption of a broad legal duty owed to all household members in take-home toxic-tort cases.  It maintains that such a rule would not justly and fairly contain liability for derivative take-home toxic-tort actions.  At oral argument, Accuratus refined its position, acknowledging that a marriage license is not a prerequisite for recognition of a duty to an injured household member suing on a take-home toxic-tort theory.  Accuratus also conceded that a legal duty could encompass members of the immediate family living together.

12

However, Accuratus contends that a legal duty should not be recognized for other individuals who have irregular or sporadic contact with an employee who brings home a toxic substance. Such contact, according to Accuratus, should not be determined as a matter of law to be reasonably foreseeable to a landowner defendant.

IV.

The duty of care for take-home toxic-tort liability discussed in Olivo was not defined on the basis of Eleanor's role as the lawfully wedded spouse to Anthony. Our reasoning in Olivo was not so much that Eleanor was married to a worker at Exxon who brought asbestos-contaminated clothing home from work but that it was foreseeable that she would be handling and laundering the soiled, asbestos-exposed clothes, which Exxon failed to protect at work and allowed to be taken home by workers. Id. at 404-05. That easily foreseeable, regular, and close contact with the dangerous condition produced the conclusion that Exxon could be held liable to Eleanor for her injuries; the Court also concluded that it was fair to impose a duty that could be assessed for negligence, proximate cause, and damages. See id. at 405.

Tort law is built on case-by-case development based on the facts presented by individual cases. In Olivo, our Court was acting in its traditional role as a court of common law, and one

13

of the common law's "great virtue[s]" is that it is dynamic, adaptable, and can evolve to accommodate changes in society. State v. Culver, 23 N.J. 495, 505, cert. denied, 354 U.S. 925, 77 S. Ct. 1387, 1 L. Ed. 2d 1441 (1957).

In our stewardship of the common law, this Court has recognized, time and again, that the evolution of case law must reflect the simultaneous evolution of societal values and public policy. See Hopkins, supra, 132 N.J. at 435 (stating that common law "cannot be immutable or inflexible"). In the specific arena of tort liability, the common law requires flexibility to grow and change when appropriate to accommodate new expectations and ideas. See Kelly v. Gwinnell, 96 N.J. 538, 552 (1984) (indicating that, in tort liability, there is need for "a continuing judicial involvement" in deciding such matters). It was in that context that we began our discussion of the issue in Olivo, supra, emphasizing that "[c]ourts traditionally have been reposed with responsibility for determining the scope of tort liability." 186 N.J. at 401.

Olivo does not suggest that the duty recognized must remain static for all future cases -- no matter the pleadings and proofs, including unknown aspects of other toxins -- and that take-home toxic-tort liability must remain limited to a spouse handling take-home toxins. That simply was an essential fact of the case on which we were called on to act, as a court of common

14

law, and determine whether, in the development of our common law, a foreseeable duty could be recognized on the facts presented.  We held that it could.  However, Olivo does not state, explicitly or implicitly, that a duty of care for take-home toxic-tort liability cannot extend beyond a spouse.  Nor does it base liability on some definition of "household" member, or even on the basis of biological or familial relationships.

Olivo must be recognized as a step in the development of the common law, which of necessity is built case by case on individual factual circumstances.  The facts that go into assessing the relationship of the parties certainly are important.  We note that no precedent from another jurisdiction, in a non-strict liability setting, has found a duty in a take-home toxic-tort cause of action outside of a factual setting involving household members, presumably because of the idiosyncratic nature of most other interactions with a take-home toxin.  See, e.g., Zimko v. Am. Cyanamid, 905 So. 2d 465, 483 (La. Ct. App. 2005) (finding that American Cyanamid owed "general duty to act reasonably in view of the foreseeable risks of danger to household members of its employees resulting from exposure to asbestos fibers carried home on its employee's clothing, person, or personal effects" and noting that "it is hardly a quantum leap to extend the duty of care owed to employees to members of the employee's household who predictably

15

come into routine contact with the employee's clothing" (quotation marks and citation omitted)); Satterfield v. Breeding Insulation Co., 266 S.W.3d 347, 374-75 (Tenn. 2008) (finding that defendant owed duty to employee's minor daughter who was exposed to take-home asbestos via father's work clothes and later developed mesothelioma allegedly due to that early exposure).

That said, we cannot define the contours of the duty owed to others in a take-home toxic-tort action through a certified question of law. While there may be situations in which household members are in contact with toxins brought home on clothing, a refined analysis for particularized risk, foreseeability, and fairness requires a case-by-case assessment in toxic-tort settings. As this Court stated in Hopkins, supra, regarding tort liability cases, "[t]he analysis is both very fact-specific and principled; it must lead to solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct." 132 N.J. at 439.

Olivo, supra, addressed the paramount importance of foreseeability. See 186 N.J. at 402-03 (explaining that duty-of-care question for take-home toxic-tort liability "devolves to a question of foreseeability"). However, "considerations of fairness and policy" also inform the analysis as to whether a

16

duty of care exists. Id. at 403; see Estate of Desir ex rel. Estiverne v. Vertus, 214 N.J. 303, 326, 328-30 (2013).

We cannot predict the direction in which the common law will evolve. Certain factors will be important as such cases present themselves. First, case law counsels that the relationship of the parties is, of necessity, relevant and weighty. See Hopkins, supra, 132 N.J. at 439. That would include an assessment not only of the relationship between a defendant's employee and the person who is exposed to the take-home toxin, but also the relationship between the defendant itself and the injured person, in determining whether it would be foreseeable, predictable, and just to find that the defendant owed a duty of care to that injured person or class of individuals. To that end, idiosyncratic encounters would be difficult to ever predict, even when occurring within the home of the person on whom the toxin is transported. Second, the opportunity for exposure to the dangerous substance and the nature of the exposure that causes the risk of injury affects the foreseeability analysis. Third, and related to the second factor, courts must take into account the employer's knowledge of the dangerousness of exposure, assessed at the time when the exposure to the individual occurred and not later, when greater information may become available. In a non-strict-liability negligence action, the dangerousness of the toxin, how it causes

17

injury, and the reasonable precautions to protect against a particular toxin are relevant in identifying a foreseeable duty by a landowner for off-premises exposure of dangerous toxins.

Although chance contact with a worker transporting home a toxic substance from another's premises should not suffice to create a duty of care under the cautioning words of Vertus, supra, 214 N.J. at 328-30, we cannot create an abstract bright-line rule at this time as to "who's in and who's out" on a negligence-based take-home toxic-tort cause of action based on Olivo or any previous decision. The contours of the issue defy definition in such manner.

Our response to the question asked by the Third Circuit will have to be limited to clarifying that the duty of care recognized in Olivo may extend, in appropriate circumstances, to a plaintiff who is not a spouse. We further instruct that the assessment should take into account a weighing of the factors identified herein to determine whether the foreseeability, fairness, and predictability concerns of Hopkins should lead to the conclusion that a duty of care should be recognized under common law.

V.

We hold that the Olivo duty of care may, in proper circumstances, extend beyond a spouse of a worker exposed to the

18

toxin that is the basis for a take-home toxic-tort theory of liability.

CHIEF JUSTICE RABNER; JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion.