IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

———————

**ERNEST V. QUIROZ AND MARY QUIROZ, HUSBAND AND WIFE,**
*Plaintiffs/Appellants,*

*v.*

**ALCOA INC., ET AL.,**
*Defendants/Appellees.*

———————

No. CV-16-0248-PR
Filed May 11, 2018

———————

Appeal from the Superior Court in Maricopa County
The Honorable Sally Schneider Duncan, Judge
No. CV2013-009160
**AFFIRMED**

Opinion of the Court of Appeals, Division One
240 Ariz. 517 (App. 2016)
**VACATED**

———————

COUNSEL:
Burt Rosenblatt, Ely Bettini Ulman & Rosenblatt, Phoenix; Michael B. Gurien (argued), Waters, Kraus & Paul, El Segundo, CA, Attorneys for Ernest V. Quiroz and Mary Quiroz

Edward M. Slaughter (argued), Hawkins Parnell Thackston & Young LLP, Dallas, Texas; Molly C. Machold, Mark B. Tuvim, Gordon & Rees LLP, Phoenix, Attorneys for Alcoa, Inc., et al.

David L. Abney, (argued) Ahwatukee Legal Office, PC, Phoenix; Stanley G. Feldman, Miller, Pitt, Feldman & McAnally, P.C., Tucson, Attorneys for Amicus Curiae Arizona Association for Justice/Arizona Trial Lawyers Association

Ellen M. Bublick, University of Arizona James E. Rogers College of Law, Tucson, Attorney for Amicus Curiae

Elizabeth S. Fitch, Righi Fitch Law Group, PLLC, Phoenix, Attorney for Amicus Curiae Coalition for Litigation Justice, Inc.

Christopher Robbins, Hill, Hall & DeCiancio, PLC, Phoenix, Attorney for Amicus Curiae Arizona Association of Defense Counsel

Thomas E. Kelly, Jr., K&L Gates LLP, Seattle, WA, Attorney for Amicus Curiae Chamber of Commerce of the United States of America

―――――――

JUSTICE GOULD authored the opinion of the Court, in which JUSTICE BRUTINEL and JUSTICES TIMMER, BOLICK, and LOPEZ joined. CHIEF JUSTICE BALES and VICE CHIEF JUSTICE PELANDER dissented.

―――――――

JUSTICE GOULD, opinion of the Court:


¶1        We address whether an employer who used asbestos materials in its workplace before 1970 had a duty to protect the public from off-site contact with employees who may have been carrying asbestos fibers on their work clothes.  Such exposure is referred to as secondary, or take-home, asbestos exposure.  We hold that the employer owed no duty to the public regarding secondary asbestos exposure.  No common law special relationship existed requiring the employer to protect the public from secondary asbestos exposure.  Additionally, Plaintiffs/Appellants have identified no public policy giving rise to such a duty.  Further, because we reject the duty framework contained in the Restatement (Third) of Torts: Liability for Physical and Emotional Harm ("Third Restatement"), we hold that no duty exists on that basis.

¶2        In reaching our decision today, we affirm Arizona's current duty framework in several key respects.  First, duty is not presumed; in every negligence case, the plaintiff bears the burden of proving the existence of a duty.  Second, pursuant to *Gipson v. Kasey*, 214 Ariz. 141, 144 ¶ 15 (2007), foreseeability is not a factor in determining duty.  Third, duty is based on either special relationships recognized by the common law or relationships created by public policy.  Fourth, in the context of duty, the primary sources for identifying public policy are state and federal statutes.  In the absence of such legislative guidance, duty may be based on the common law — specifically, case law or Restatement sections consistent with Arizona law.

**BACKGROUND**[1]

¶3        Ernest V. Quiroz died in October 2014 from mesothelioma, a form of cancer associated with exposure to asbestos.  Quiroz's surviving wife, children, and parents (collectively, "the Family") filed a lawsuit, alleging Defendants Reynolds Metal Company, Alcoa, Inc., and Reywest Development Company (collectively, "Reynolds") negligently caused his death.  Specifically, the Family alleges that when Quiroz's father ("Father") was working at Reynolds' plant from 1948 until 1983, his clothes were contaminated with asbestos fibers.  The Family contends that when Father came home from work, Quiroz, who lived with Father as a minor from 1952 to 1970, was exposed to the asbestos fibers on Father's clothes.  The Family further contends this exposure eventually caused Quiroz's mesothelioma.

¶4        The Family asserts that Reynolds had a duty to protect Quiroz from exposure to take-home asbestos.  They contend Reynolds breached this duty by failing to warn Father about the dangers of secondary asbestos exposure.  The Family also alleges that Reynolds failed to provide safety equipment to Father and failed to take necessary safety measures to protect Quiroz from such exposure.

¶5        Reynolds filed a motion for summary judgment, asserting it owed no duty to Quiroz.  The superior court granted Reynolds' motion, and the court of appeals affirmed.  *Quiroz v. ALCOA Inc.*, 240 Ariz. 517, 519 ¶ 1 (App. 2016).

¶6        We granted review because the Family raises two issues of statewide importance: (1) whether Reynolds owed a duty to Quiroz; and (2) whether Arizona should adopt the duty framework contained in the Third Restatement.  We have jurisdiction pursuant to article 6, section 5(3), of the Arizona Constitution and A.R.S. § 12-120.24.

---

[1] Because this case involves an appeal from a grant of summary judgment, we view the evidence and all reasonable inferences in the light most favorable to the non-moving parties.  *Andrews v. Blake*, 205 Ariz. 236, 240 ¶ 12 (2003).

## DISCUSSION

### I.

¶7        To establish a defendant's liability for a negligence claim, a plaintiff must prove: (1) a duty requiring the defendant to conform to a certain standard of care; (2) breach of that standard; (3) a causal connection between the breach and the resulting injury; and (4) actual damages. *Gipson*, 214 Ariz. at 143 ¶ 9; *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 356 (1985); *Ontiveros v. Borak*, 136 Ariz. 500, 504 (1983). Whether a duty exists "is a legal matter to be determined *before* the case-specific facts are considered." *Gipson*, 214 Ariz. at 145 ¶ 21. As such, we review the existence of duty de novo as a matter of law. *Id.* at 143 ¶¶ 7, 9.

### A. Foreseeability

¶8        Foreseeability is a concept that can be used in different ways to determine tort liability. For many years, Arizona, like most jurisdictions, used foreseeability as a factor in determining duty. A duty based on foreseeability exists when a defendant realizes or should realize that his conduct creates an unreasonable risk of harm to a "foreseeable plaintiff." *Rossell v. Volkswagen of Am.*, 147 Ariz. 160, 164 (1985); *Tucker v. Collar*, 79 Ariz. 141, 146 (1955), *overruled on other grounds by Rosen v. Knaub*, 175 Ariz. 329 (1993). A "foreseeable plaintiff" is one who is within the "orbit," or "zone of danger" created by a defendant's conduct. *See Rossell*, 147 Ariz. at 164; *Tucker*, 79 Ariz. at 146; *see also Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99, 99–101 (N.Y. 1928) (holding that foreseeability is a factor in determining duty and stating that "the orbit of the danger as disclosed to the eye of reasonable vigilance would be the orbit of the duty").

¶9        Foreseeability can also be used to determine whether the defendant breached the relevant standard of care or caused the plaintiff's injury. *Gipson,* 214 Ariz. at 144 ¶¶ 16–17 (causation); *Markowitz*, 146 Ariz. at 357 (standard of care); *Coburn v. City of Tucson*, 143 Ariz. 50, 52 (1984) (standard of care). Unlike duty, applying foreseeability to breach and causation determines whether the *injury* was foreseeable, and not whether the *plaintiff* was foreseeable. *See Robertson v. Sixpence Inns of Am., Inc.*, 163 Ariz. 539, 544–45 (1990); *Markowitz*, 146 Ariz. at 356–57.

**¶10**        Prior to *Gipson*, some Arizona courts limited foreseeability to determining the issue of breach. *See Markowitz*, 146 Ariz. at 357; *Coburn*, 143 Ariz. at 51–52. These courts reasoned that applying foreseeability to duty required judges to make fact-specific determinations that encroached on the role of the jury. *Markowitz*, 146 Ariz. at 357; *Coburn*, 143 Ariz. at 52. However, despite these cases, foreseeability was widely used to determine the existence of duty, and it remained deeply embedded in the duty framework of this state. *See, e.g., Donnelly Constr. Co. v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 187 (1984) ("Duty and liability are only imposed where both the plaintiff and the risk are foreseeable to a reasonable person."); *Rager v. Superior Coach Sales and Serv. of Ariz.*, 111 Ariz. 204, 210 (1974) ("Whether or not there is a duty on the part of the defendant to protect the plaintiff from the injury of which he complains is based on foreseeability."); *West v. Cruz*, 75 Ariz. 13, 19 (1952) (adopting *Palsgraf's* foreseeability framework for determining duty); *see also* Prosser & Keeton, *The Law of Torts* § 43, at 284–88 (5th ed. 1984) (discussing the adoption of foreseeability to determine duty by most jurisdictions).

**¶11**        In *Gipson*, this Court expressly held "that foreseeability is not a factor to be considered by courts when making determinations of duty, and we reject any contrary suggestion in prior opinions." 214 Ariz. at 144 ¶ 15. *Gipson* acknowledged "that our case law has created some confusion and lack of clarity . . . as to what extent, if any, foreseeability issues bear on the initial legal determination of duty." *Id.* (citation and internal quotation marks omitted). However, *Gipson* concluded that determining "[w]hether an injury to a particular plaintiff was foreseeable by a particular defendant necessarily involves an inquiry into the specific facts of an individual case," and that "[s]uch factual inquiries are reserved for the jury." *Id.* ¶ 16.

**¶12**        Thus, *Gipson* enacted a sea change in Arizona tort law by removing foreseeability from our duty framework. *See, e.g., Guerra v. State*, 237 Ariz. 183, 185 ¶ 8 (2015) (stating foreseeability is no longer a factor in determining duty); *Barkhurst v. Kingsman of Route 66, Inc.*, 234 Ariz. 470, 475 ¶ 17 (App. 2014) (citing *Gipson* and stating that foreseeability "is no longer the proper standard for determining duty in Arizona"). Post-*Gipson*, to the extent our prior cases relied on foreseeability to determine duty, they are no longer valid. *See Boisson v. Ariz. Bd. of Regents*, 236 Ariz. 619, 622 ¶ 6 (App. 2015) (holding that post-*Gipson* "foreseeability is not a part of the duty inquiry and those portions of *pre-Gipson* cases relying on foreseeability when addressing the issue are no longer valid"); *Delci v. Gutierrez Trucking*

*Co.*, 229 Ariz. 333, 336 ¶ 11 (App. 2012) (applying *Gipson* and holding that duty determinations in pre-*Gipson* cases "premised on a foreseeability analysis" are "no longer valid").

**¶13**        To be clear, in eliminating foreseeability, *Gipson* changed our *duty framework* by limiting the duty analysis to special relationships and public policy. *Infra* ¶ 14. It did not, however, narrow the circumstances in which an actor may be liable for *negligent conduct*. Additionally, *Gipson* did not completely remove foreseeability from our negligence framework. Rather, *Gipson* held that foreseeability may still be used in determining breach and causation. 214 Ariz. at 143, 145 ¶¶ 10, 16–17, 21; *see also Vasquez v. State*, 220 Ariz. 304, 314 ¶ 33 (App. 2008). Stated another way, *Gipson* held that while courts may no longer use foreseeability to determine whether a plaintiff is foreseeable (duty), they may still use foreseeability in determining whether the injury is foreseeable (breach and causation). 214 Ariz. at 143–45 ¶¶ 9–10, 15–17, 21; *supra* ¶¶ 8–9.

## B. Special Relationships and Public Policy

**¶14**        Based on *Gipson's* elimination of foreseeability, duty in Arizona is based on either recognized common law special relationships or relationships created by public policy. *See Guerra*, 237 Ariz. at 187 ¶ 20; *Gipson*, 214 Ariz. at 144–45 ¶¶ 18, 23. Duties based on special relationships may arise from several sources, including special relationships recognized by the common law, contracts, or "conduct undertaken by the defendant." *Gipson*, 214 Ariz. at 145 ¶¶ 18–19; Restatement (Second) of Torts §§ 314A, 316–19 ("Second Restatement") (discussing duties based on common law special relationships); Second Restatement § 323 (discussing duty based on a negligent undertaking); *see also Diaz v. Phx. Lubrication Serv., Inc.*, 224 Ariz. 335, 339–40 ¶¶ 15–19 (App. 2010) (discussing duty arising from a contract).

**¶15**        Public policy creating a duty is based on our state and federal statutes and the common law. *See Gipson*, 214 Ariz. at 146 ¶¶ 25–26; *cf. Gilbert Tuscany Lender, LLC v. Wells Fargo Bank*, 232 Ariz. 598, 602 ¶¶ 19–20 (App. 2013) (declining to impose a duty unless "supported by a state statute or a Restatement section"). A statute reflecting public policy may create a duty when a plaintiff "is within the class of persons to be protected by the statute and the harm that occurred . . . is the risk that the statute sought to protect against." *Gipson*, 214 Ariz. at 146 ¶ 26. Unlike duties based on special relationships, duties based on public policy do not necessarily

require preexisting relationships. *Id.* at 145 ¶ 22. Rather, the statute itself creates a legal relationship between the parties giving rise to a duty. *See Alhambra Sch. Dist. v. Superior Court*, 165 Ariz. 38, 42 (1990) ("The relationship that gives rise to a duty of care may also be created by statute.").

¶16 To be sure, in a country such as ours with over 300 million people, duties based on public policy are necessary to govern relationships between people who may be legal "strangers." For example, traffic laws give rise to duties regulating conduct between motorists. *Evans v. Pickett*, 102 Ariz. 393, 397–98 (1967) (discussing duty of motorist, based on a traffic statute, to maintain a reasonable speed to avoid collisions with other motorists), *overruled on other grounds by Heimke v. Munoz*, 106 Ariz. 26 (1970); *Gage v. Kuhlmeier*, 132 Ariz. 465, 467 (App. 1982) (discussing duty of motorist, based on a traffic statute, to avoid a collision by yielding the right-of-way). Likewise, criminal laws give rise to duties between members of the public who do not share preexisting relationships. *See Gipson*, 214 Ariz. at 146 ¶ 26.

## II.

### A. Duty Based on Public Policy

¶17 The Family urges us to recognize a duty in this case by considering various public policy grounds. *See, e.g., Bloxham v. Glock, Inc.*, 203 Ariz. 271, 275–76 ¶¶ 9–12 (App. 2002) (listing multiple public policy factors a court may consider in determining duty); *see also Quiroz*, 240 Ariz. at 522–23 ¶¶ 23–33 (addressing *Bloxham* factors raised by the Family to urge the existence of a duty based on public policy grounds). The Family does not, however, cite any state or federal statute giving rise to a duty in this case.[2]

---

[2] We note that several federal statutes regulating asbestos were enacted *after* 1970, the last date of Quiroz's secondary exposure to asbestos. *See, e.g.*, 20 U.S.C. §§ 4011–4022 (1984); 15 U.S.C. §§ 2641–2656 (1986); 15 U.S.C. § 2607(f) (1990). There are also some general environmental laws that apply to asbestos. *See, e.g.*, 42 U.S.C. §§ 7401–7431 (1970); 42 U.S.C. §§ 9601–9628 (1980). None of these statutes were cited by the Family as a public policy basis giving rise to a duty, and we do not decide whether they may in fact give rise to a duty for secondary asbestos exposure. *Cf. Ga. Pac., LLC v. Farrar*, 69 A.3d 1028, 1039 (Md. 2013) (holding that because the

**¶18**            In Arizona, our primary source for identifying a duty based on public policy is our state statutes.  *See Gipson*, 214 Ariz. at 146 ¶¶ 25–26; *see also Estate of Hernandez v. Ariz. Bd. of Regents*, 177 Ariz. 244, 253, 255–56 (1994) (holding that statutes proscribing underage drinking give rise to a duty by non-licensees to refrain from furnishing alcohol to minors); *Brannigan v. Raybuck*, 136 Ariz. 513, 516–17 (1983) (stating that statutes barring minors from consuming alcohol create a duty prohibiting liquor licensees from furnishing alcohol to minors); *Cobb v. Salt River Valley Water Users' Ass'n*, 57 Ariz. 451, 456–57 (1941) (noting a local ordinance gave rise to a duty by adjacent property owners to avoid discharging water on public sidewalks); *Estate of Maudsley v. Meta Servs., Inc.*, 227 Ariz. 430, 435–37 ¶¶ 16–22 (App. 2011) (stating that mental health statutes give rise to a duty by mental health facilities to screen, evaluate, and treat individuals who may be in need of mental health services).  We have also recognized that local ordinances may give rise to a public policy duty.  *Thomas v. Baker Family Tr.*, 191 Ariz. 187, 188 (App. 1997) (stating that while a property owner has no common law duty to repair a sidewalk adjacent to his property, "such a duty may be imposed by statute or city ordinance").

**¶19**            This litany of cases demonstrates that, in the absence of a statute, we exercise great restraint in declaring public policy.  As we stated in *Ray v. Tucson Medical Center*, 72 Ariz. 22, 35–36 (1951):

> The declaration of "public policy" is primarily a legislative function.  The courts unquestionably have authority to declare a public policy which already exists and to base its decisions upon that ground.  But in the absence of a legislative declaration of what that public policy is, before courts are justified in declaring its existence such public policy should be so thoroughly established as a state of public mind, so united and so definite and fixed that its existence is not subject to any substantial doubt.

*Cf. Stanley v. McCarver*, 208 Ariz. 219, 227–28 ¶ 33 (2004) (Jones, C.J., dissenting) (stating that in recognizing tort duties, we must "allow the legislature to define the public policy of the state"); *Local 266, Int'l Bhd. of*

---

earliest OSHA regulations were created in 1972, a manufacturer had no duty to warn of the dangers of household exposure to asbestos  prior to 1972).

*Elec. Workers, A. F. of L. v. Salt River Project Agric. Improvement & Power Dist.*, 78 Ariz. 30, 40–41 (1954) ("We have said that statements of public policy must be made by the people through the legislature.")

**¶20**       We have also recognized public policy giving rise to a duty based on the common law — specifically, case law and Restatement sections consistent with Arizona law. *Supra* ¶¶ 14–15. However, reliance on the common law does not mean that this Court establishes duties based on our own notions of appropriate public policy. Thus, even in those cases where we have mentioned "social concerns" in relation to tort duties, we have ultimately premised the existence of a duty on a statute or a recognized special relationship. *See, e.g., Stanley*, 208 Ariz. at 226 ¶ 22 (stating that duties "emanate from [a] panoply of social concerns," but basing duty on negligent undertaking); *Ontiveros*, 136 Ariz. at 508 (noting that duty is based on the "sum total" of policy considerations, but basing the existence of duty on a statute and the special relationship between liquor licensees and their customers).

**¶21**       Accordingly, we conclude the Family has failed to identify a valid public policy creating a legal relationship giving rise to a duty.

## B. Duty Based on a Special Relationship

**¶22**       There is no dispute that Reynolds, as Father's employer, owed a duty of care to Father. *See Bogue v. Better-Bilt Aluminum Co.*, 179 Ariz. 22, 34 (App. 1994) (noting a duty exists based on the employer–employee special relationship); Second Restatement § 314B (same). Rather, the Family argues there was a special relationship between Reynolds and any member of the public, including Quiroz, who may have been exposed to secondary asbestos.

**¶23**       We reject this argument because there is no legally recognized special relationship giving rise to a duty between Reynolds and Quiroz. Quiroz did not have an employer-employee relationship with Reynolds, and there is no allegation that Reynolds created a special relationship with Quiroz based on a contract or a negligent undertaking. *See supra* ¶ 14. Additionally, Reynolds and Quiroz shared no relationship as landowner-invitee or landowner-licensee. Quiroz suffered no injury on Reynolds' property, nor was he injured while entering or leaving Reynolds' property. *See Wickham v. Hopkins*, 226 Ariz. 468, 471, 472 ¶¶ 11, 17–18 (App. 2011)

(explaining landowner's duties to licensees and invitees); Second Restatement §§ 318, 341–43 (same).

**¶24** Even so, both the Family and the dissent argue that landowners such as Reynolds owe a general duty of care to the public for off-premises injuries. Specifically, they claim that Reynolds owes a duty of care to anyone who is injured by its "risk-creating conduct," "even when the harm occurs off-premises." *See infra* ¶¶ 95, 110.

**¶25** The general duty proposed by the Family and the dissent surpasses the bounds of Arizona law. While our case law recognizes that landowners *may*, in some circumstances, owe a duty of care for off-premises injuries, it does not support the Family's far more sweeping claim that landowners owe a general duty to the public for off-premises injuries.[3] Indeed, none of the authorities cited by the Family or the dissent support the existence of such a broad duty.

**¶26** The Family's reliance on *Udy v. Calvary Corp.*, 162 Ariz. 7 (App. 1989), for the existence of a general off-premises duty is misplaced. In *Udy*, a tenant rented an unfenced trailer space next to a busy street. *Id.*

---

[3] Because the Family's claim is limited to a negligence claim, we do not discuss a landowner's potential liability for off-premises injuries premised on strict liability. For example, companies that design, manufacture, sell or distribute asbestos materials and products may be held strictly liable for injuries caused to plaintiffs, regardless of where the injury occurs. *See O.S. Stapley Co. v. Miller*, 103 Ariz. 556, 559–60 (1968) (discussing strict liability for manufacturers and sellers). Other grounds for off-premises strict liability may also apply to landowners. *See Gillespie Land & Irrigation Co. v. Gonzalez*, 93 Ariz. 152, 165 (1963) (holding that a landowner may be strictly liable for damages caused by diverting natural waters or flood waters onto neighboring and downstream properties); *Schlecht v. Schiel*, 76 Ariz. 214, 218 (1953) (same); *Correa v. Curbey*, 124 Ariz. 480, 481 (App. 1979) (stating a landowner may be strictly liable for off-premises injuries caused by conducting abnormally dangerous activities on his land, such as blasting with explosives); *see also* 42 U.S.C. §§ 6901–6908a (describing statutory liability for releasing hazardous substances); 42 U.S.C. §§ 9601–9628 (describing liability for transporting, disposing of, or releasing hazardous waste).

at 9–10. The tenant had small children and sought permission from the landlord to erect a fence to prevent her children from running into the street. *Id.* The landlord denied the request. *Id.* Later, one of the tenant's children ran into the street and was seriously injured when he was struck by a car. *Id.* The tenant sued the landlord for her child's injuries. *Id.* The landlord filed a motion for summary judgment, claiming he had no duty to protect tenants from dangers outside his property. *Id.* at 10–11. The superior court granted the motion. *Id.*

**¶27** The court of appeals reversed, stating that the location of the injury was not a factor in determining the existence of a duty. *Id.* at 11. Rather, the court held that duty was based on the parties' special relationship as landlord–tenant. *Id.* at 10–13. In contrast, whether the landlord was liable for injuries occurring outside his property concerned the relevant standard of care, i.e., the reasonable precautions the landlord was required to take for the safety of his tenants. *Id.* at 10–13; *see also Stephens v. Bashas' Inc.*, 186 Ariz. 427, 430–31 (App. 1996) (holding that duty was based on landowner-invitee relationship, and the fact plaintiff was injured outside defendant's premises was relevant to breach/standard of care, not duty).

**¶28** *Udy* has no application here. Of course, if a special relationship exists between a landowner and an injured plaintiff, a duty exists even if the injury occurs off-premises. *Udy*, 162 Ariz. at 9–10; *see also Engler v. Gulf Interstate Eng'g, Inc.*, 230 Ariz. 55, 57 ¶ 9 (2012) (noting that an employer/landowner is vicariously liable for off-premises injuries caused by the negligence of its employee); *Wickham*, 226 Ariz. at 471, 472 ¶¶ 11, 17–18 (discussing duty owed by landowners to business invitees for off-premises injuries); *Stephens*, 186 Ariz. at 430–31 (holding that a landowner owes a duty to business invitees to provide safe ingress and egress from his property). But here, the parties do not share a landlord–tenant relationship; indeed, the Family has not alleged the existence of *any* recognized special relationship.

**¶29** The Family next contends that *Burns v. Jaquays Mining Corp.*, 156 Ariz. 375 (App. 1987), "implicitly" recognizes a duty of care owed by landowners who release airborne asbestos fibers onto neighboring properties. The Family asserts that *Burns*, by extension, gives rise to a duty owed by Reynolds to protect the public from secondary exposure to asbestos. We disagree.

¶30     In *Burns*, the defendant landowner owned an asbestos mill. The asbestos fibers and waste from the mill blew into a neighboring trailer park. *Id.* at 376. The amount of airborne asbestos blown into the trailer park was substantial; the governor declared the park a disaster area, and steps were taken to relocate the residents. *Id.*

¶31     The residents eventually filed claims against the mill for negligence, gross negligence, strict liability, and nuisance, alleging their exposure to airborne asbestos increased their risk of developing asbestos-related diseases in the future. *Id.* at 377. The owner of the mill filed a motion for summary judgment, which the superior court granted, dismissing all the residents' claims except for their property damage claim. *Id.*

¶32     The court of appeals affirmed the superior court's grant of summary judgment as to the residents' negligence claim. *Id.* at 377, 381. The court held that the residents had no cognizable negligence claim because the risk of future injuries was insufficient to prove the requisite element of "actual loss or damage[s]." *Id.* at 376; *see also Markowitz*, 146 Ariz. at 356 (stating proof of actual damages is an element of a negligence claim).

¶33     However, *Burns* reversed the trial court's dismissal of the residents' nuisance claim. *Burns* concluded that, based on *Ayers v. Twp. of Jackson*, 525 A.2d 287, 294, 300–01 (N.J. 1987), the medical costs associated with monitoring the residents' subclinical injuries was recoverable in the context of a nuisance claim. *Burns*, 156 Ariz. at 379–81; *see also Ayers*, 525 A.2d at 294, 300–01 (holding that damages for medical monitoring may be recovered in a nuisance claim).

¶34     The Family reads too much into *Burns*. The Family has never alleged that Reynolds created a nuisance. Perhaps more importantly, *Burns* did not address duty; it addressed damages. 156 Ariz. at 377–81. The court never determined, expressly or impliedly, that the mill owner owed a general duty to the public for injuries caused by asbestos that was blown off its property. Rather, it simply affirmed the well-established rule that when a landowner creates a nuisance that physically intrudes upon another person's property, it may be liable for the damages caused by the nuisance. *Id.* at 300-01; *see also Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Ariz.*, 148 Ariz. 1, 4 (1985) (discussing generally the torts of public and

private nuisance); *Kovacovich v. Phelps Dodge Corp.*, 62 Ariz. 193, 197 (1945) (holding that proof showing smoke from company's smelter damaged plaintiff's crops fixed company's liability based on nuisance); *United Verde Extension Mining Co. v. Ralston*, 37 Ariz. 554, 561–62 (1931) (holding smoke and gas discharged from company's smelter created a nuisance; as a result, company was liable for damages caused to plaintiff's property that was located ten miles from its plant); *see also* A.R.S. § 13-2917(A)(1) (defining a public nuisance as "anything . . . injurious to health . . . that interferes with the comfortable enjoyment of life or property by an entire community or neighborhood or by a considerable number of persons").

¶35　　　*MacNeil v. Perkins*, 84 Ariz. 74 (1958), cited by Amicus and the dissent, also does not support the existence of a general off-premises duty. Rather, *MacNeil* recognizes a landowner's liability as to children for maintaining an attractive nuisance on its property. *Id.* at 78–79, 82–86; *see* Second Restatement § 339 (listing the elements of the attractive nuisance doctrine). No general off-premises duty was addressed or discussed by the Court. And, to be sure, the Family has never alleged that Reynolds created or maintained an attractive nuisance at its facility.

## C. Duty Based on Foreseeability

¶36　　　Despite *Gipson's* express rejection of foreseeability as a factor in determining duty, both the Family and the dissent attempt to support their general duty claim by citing cases and the Second Restatement sections that rely on foreseeability. For example, as support for its general off-premises duty, the dissent quotes *Crouse v. Wilbur-Ellis Co.*, 77 Ariz. 359, 365 (1954), as stating that "fellow-citizens" have a duty to "avoid causing harm to one another." *See infra* ¶ 97. However, when this statement is read in context, it is plain that *Crouse* is discussing the existence of a duty based on *foreseeability*. *See Crouse*, 77 Ariz. at 365–66. Indeed, throughout the entire section quoted by the dissent, *Crouse* engages in a foreseeability analysis, ultimately concluding that a duty existed because the "plaintiffs were foreseeable plaintiffs, ones within the orbit of the risk." *Id.* at 366 (citation and internal quotation marks omitted).[4]

---

[4]　At bottom, the underlying liability for both the landowner and the insecticide company in *Crouse* was, like the landowner's liability in *S. A. Gerrard Co. v. Fricker*, 42 Ariz. 503 (1933), based on a physical trespass caused by crop dusting. 77 Ariz. at 361–62; *see Sanders v. Beckwith*, 79 Ariz.

¶37　　　　Amicus and the dissent also argue that *Carver v. Salt River Valley Water Users' Association*, 104 Ariz. 513 (1969), recognizes a general duty owed by landowners for all off-premises injuries. *Carver* involved a plaintiff who was injured when a tree planted next to a public roadway fell on her car. *Id.* at 514–15. The tree was located on an irrigation canal owned and maintained by defendant. *Id.* at 515. Amicus and the dissent claim that the court based the defendant's duty on § 364 of the Second Restatement, which provides that a landowner is "subject to liability" for off-premises injuries caused by an "artificial condition" (a planted tree) which the landowner "realizes or should realize will involve an unreasonable risk" of harm to travelers on the public highway.

¶38　　　　*Carver* does not support a general off–premises duty. Section 364, by its terms, undeniably relies on foreseeability to determine a landowner's "liability." Thus, post-*Gipson*, § 364 cannot be used as a basis for creating the far-reaching general *duty* proposed by Amicus and the dissent.

¶39　　　　Of course, *Carver* can be reconciled with Arizona law without doing violence to *Gipson*. Indeed, it is well-established in Arizona that landowners owe a duty to persons travelling on public highways adjacent to their property. *See, e.g.*, *Carrow Co. v. Lusby*, 167 Ariz. 18, 24 (1990) (stating that an owner of livestock in open range territory owes a duty of care to motorists travelling on a public highway); *Beltran v. Stroud*, 63 Ariz. 249, 253 (1945) (stating that abutting property owners must exercise their property rights "with due regard to the safety of the public, and in such a manner as not to interfere unreasonably with the public use of the highway"); *see also* Prosser & Keeton, § 57, at 388 ("The public right of passage carries with it, once the highway has been established, an obligation upon the occupiers of abutting land to use reasonable care to see that the passage is safe."). At bottom, this duty is based on Arizona's public policy that citizens have the right to safe passage on a public highway. *See Campbell v. Superior Court*, 106 Ariz. 542, 545–46 (1971) ("In Arizona the use of the highways of this state is a right which all qualified citizens possess subject to reasonable regulation under the police power of the sovereign."); *Mack v. Dellas*, 235

_____

67, 71 (1955) (holding a landowner was liable for damages caused by crop dusting to an adjacent property based on negligent trespass). Even so, *Crouse* has no relevance in this case because the Family has never alleged Reynolds committed a trespass against them.

Ariz. 64, 66–67 ¶ 8 (App. 2014) (discussing the common-law right to safe passage on public highways); *see also* A.R.S. § 13-2906(A)(1) (stating it is a criminal offense to interfere with or obstruct passage on a public highway).

**¶40** Finally, the Family urges us to impose a general duty on landowners for off-premises injuries based on § 371 of the Second Restatement, which provides:

> A possessor of land is subject to liability for physical harm to others outside of the land caused by an activity carried on by him thereon which he realizes or should realize will involve an unreasonable risk of physical harm to them under the same conditions as though the activity were carried on at a neutral place.

**¶41** We generally follow the Restatement unless it conflicts with Arizona law. *Barnes v. Outlaw*, 192 Ariz. 283, 285 ¶ 6 (1998). However, § 371 relies on foreseeability, and therefore cannot be used as a basis for creating a duty. *Cf. Alcombrack v. Ciccarelli*, 238 Ariz. 538, 540, 544–45 ¶¶ 7, 20 (App. 2015) (stating that, based on *Gipson*, § 321 of the Second Restatement "is inconsistent with current Arizona law" to the extent it relies on foreseeability to determine duty). Indeed, the comments and illustrations to § 371 clearly state that the only outcome-determinative factor in finding "liability" under this section is foreseeability. *Id.* cmt. b and illus. 1 and 2; *see also Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 444–47, 446 n.4 (6th Cir. 2009) (holding an employer had no duty to warn a family member about take-home asbestos because the family member was not a foreseeable plaintiff; and further holding that plaintiff's reliance on § 371 of the Second Restatement "d[id] not alter" its foreseeability analysis regarding duty because § 371 "also *incorporates foreseeability*" (emphasis added)).

**¶42** The Family asserts that, when considering a defendant's "liability" under § 371, *Gipson* permits us to apply this section to determine whether a landowner has breached the standard of care or caused a plaintiff's injury. We agree. Plainly, *Gipson* does not prohibit a court from using foreseeability to determine breach and causation. *See supra* ¶ 13. However, breach and causation are not at issue in this appeal. As relevant here, the Family cannot, in fidelity to *Gipson*, use § 371 to create a duty.

¶43         Even if we ignored the fact that § 371 is based on foreseeability, this section does not, by its terms, create or impose a general duty on landowners for off-premises injuries. Indeed, the dissent recognizes that § 371 does not create such a duty. *Infra* ¶ 111.

¶44         Section 371 directs that a landowner is liable for injuries he causes outside his property "under the same conditions as though the activity were carried on at a neutral place." The comments define "neutral place" to mean a place "in which both the person who does the act and the person who sustains bodily harm have an equal right or privilege or absence of right or privilege to be." *Id.* cmt. a. Such places include "a highway, public hall or other public place," as well as "land in the possession of a third person." *Id.*

¶45         In short, a landowner's liability under § 371 is not limited by the common law rules regarding a plaintiff who enters the *landowner's* property (designating the plaintiff as a licensee, invitee, or trespasser). Such designations have no relevance in a "neutral place" where both parties have an equal right to occupy the property. Of course, any liability under this section presupposes that the landowner owes some recognized duty to the plaintiff. Thus, absent a special relationship or public policy creating a duty, § 371 does not, by itself, create a duty.

¶46         In sum, in an effort to expand the limits of a landowner's duty for off-premises injuries, the dissent seeks to rely on cases and Restatement sections premised on foreseeability. To avoid the obvious conflict this approach creates with *Gipson*, they recharacterize the subject cases and Restatement sections by claiming they do not rely on foreseeability to determine *duty*, but rather they support "a finding of negligence and thus liability." *Infra* ¶ 114.

¶47         There are two fundamental problems with this approach. First, whether it falls under the general auspices of "negligence" or "liability," both the Family and the dissent are in fact using cases and Restatement sections premised on foreseeability to create a new duty. Second, by characterizing the duty analysis as one addressing "negligence" or "liability," they ignore duty as a separate element of a negligence claim, and obscure the lines between duty, breach, and causation.

¶48 Thus, we disagree with the Family and the dissent. Duty is a separate, material element of every negligence claim; it should not be effectively removed as an element by merging it with the broad terms of "negligence" and "liability." Additionally, because *Gipson* has changed Arizona law by removing foreseeability from the duty framework, we cannot rely on foreseeability to expand the duties of landowners.

### D. Other Jurisdictions

¶49 Our determination that Reynolds owed no duty to Quiroz for secondary exposure to asbestos is consistent with decisions in other jurisdictions. *See, e.g.*, *Riedel v. ICI Ams. Inc.*, 968 A.2d 17, 23 (Del. 2009) (finding no duty to protect an employee's daughter from secondary exposure to asbestos because there was no special relationship between employer and daughter); *CSX Transp., Inc. v. Williams*, 608 S.E.2d 208, 210 (Ga. 2005) (holding that an employer/landowner had no duty to non-employee family members who were exposed to take-home asbestos); *Palmer v. 999 Que., Inc.*, 874 N.W.2d 303, 309–10 ¶¶14–17 (N.D. 2016) (holding that employer had no duty to protect an employee's family member from take-home asbestos because there was no special relationship between the family member and the employer).

¶50 In contrast, jurisdictions that have recognized a duty in take-home asbestos cases have relied on foreseeability, a factor that is not considered in Arizona when determining duty. *See, e.g.*, *Martin*, 561 F.3d at 444–47, 446 n.4 (holding that there was no duty for an employer to warn a family member regarding take-home asbestos under Kentucky law or Restatement Second § 371 because the family member was not a foreseeable plaintiff); *Kesner v. Superior Court*, 384 P.3d 283, 290–91, 299 (Cal. 2016) (holding that an employer has a duty for take-home asbestos based on Cal. Civ. Code § 1714 and California case law, which provide that foreseeability is an "important factor" in determining duty); *Schwartz v. Accuratus Corp.*, 139 A.3d 84, 88–89, 92 (N.J. 2016) (recognizing duty based on foreseeability); *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 362–63 (Tenn. 2008) (finding duty employing Third Restatement and foreseeability analysis); *cf. Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1098–99 ¶¶ 21, 27–28 (Ill. 2012) (remarking that foreseeability is "an integral factor to the existence of duty").

**II.**

¶51		The Family also argues that we should recognize a duty based on the Third Restatement.  Specifically, the Family cites to § 7 and to § 54, which provides that a duty exists for possessors of land "for artificial conditions or conduct on the land that poses a risk of physical harm to persons or property not on the land." *See also id*. § 54 cmt. b (stating that § 54 is a special application of § 7).   For the reasons discussed below, we reject the Third Restatement approach.

## A.  Third Restatement Duty Framework

¶52		Under the Third Restatement, duty is "ordinarily" presumed to exist when a defendant, by his actions, creates a risk of harm to a plaintiff.  Third Restatement § 7(a).  This presumed duty relieves the plaintiff of the burden of proving duty, and requires the defendant to show that, based on some "countervailing principle or policy," a no-duty rule should apply to its case.  *Id.* § 7(b); *see also id*. Reporter's Note to cmt. b (stating the "burden" of pleading a no-duty rule is on the defendant).

¶53		In deciding whether to create a no-duty rule, courts must "determine legislative facts necessary to decide whether a no-duty rule is appropriate in a particular category of cases."  Third Restatement § 7 cmt. b.  This procedure requires courts, at the request of the defendant, to engage in a multi-factored policy analysis, considering such matters as "general social norms of responsibility" and the "overall social impact of imposing" a duty on a "class of actors."  *Id.* § 7 cmts. c and i.

¶54		The Third Restatement also provides that no duty is presumed to exist when a passive defendant, through inaction, fails to protect a plaintiff from harm.  *Id.* § 37.  Under these circumstances, a plaintiff bears the burden of proving a defendant had an affirmative duty to act, i.e., to protect plaintiff from harm.  *See id*. § 37 and cmt. b.

¶55		The purported distinction, however, between § 7 and § 37 is illusory, because the Third Restatement defines "risk creation" so broadly that virtually every case falls under the presumed duty of § 7.  This problem stems from the fact that, practically speaking, a defendant can increase the risk of harm to a plaintiff by both his actions (§ 7) and by his failure to act to protect the plaintiff from harm (§ 37).  Thus, the Third Restatement

emphasizes that risk creation is not limited to conduct that *actually* creates a risk of harm but includes any conduct that might *possibly increase* the risk of harm. *See id.* § 37 cmts. c and d; *see also id.* § 19 cmt. e (stating duty is presumed where "defendant's conduct creates or increases the possibility of harm caused by third-party misconduct").

¶56　　　　Additionally, risk creation is not confined to the specific act that causes an injury. Rather, a defendant creates a risk of harm if, at any point during the "entire course of conduct" leading up to plaintiff's injury, he commits an act that "set in motion a risk of harm." *Satterfield*, 266 S.W.3d at 356–57, 364; Third Restatement § 37 cmt. c and Reporter's Note to cmt. c. Thus, a presumed duty exists "even though the specific conduct alleged to be a *breach* of the duty of reasonable care was itself an omission." Third Restatement § 37 cmt. c. And in examining a defendant's "entire course of conduct" for possible actions creating a risk of harm, the Third Restatement suggests the widest possible inquiry: "whether, if the actor had never existed, the harm would not have occurred." *Id.* § 7 Reporter's Note to cmt. l.

¶57　　　　The illustrations provided by the Third Restatement also demonstrate how broadly it views the concept of risk creation. For example, furnishing a gun to another person creates a presumed duty because it increases the possibility that someone might be shot with the gun. *See id.* § 37 cmt. d. Similarly, providing alcohol to an adult social guest creates a presumed duty because it increases the possibility the guest may become intoxicated and injure himself or a third party. *Id.*; *see also id.* § 37 cmt. c (stating that operating a business in a high crime area increases the risk customers may be injured; as a result, the act of opening a business in such an area creates a presumed duty of care to any customer injured).

¶58　　　　Additionally, the Third Restatement's risk-creation framework essentially gives rise to a presumed duty every time a plaintiff is injured by a defendant. As a practical matter, by alleging that a defendant caused his injury, a plaintiff necessarily asserts that defendant's conduct created a risk of physical injury. *See id.* § 6 cmt. f (stating that presuming a duty of care under § 7 "is equivalent to saying that an actor is subject to liability for negligent conduct that causes physical harm"); *see also id.* § 7 Reporter's Note to cmt. b ("[W]hen a plaintiff pleads that defendant's negligence caused physical harm, the defendant owes plaintiff a duty of reasonable care in the vast majority of cases."); *Satterfield*, 266 S.W.3d at 377

19

(Holder, J., concurring and dissenting) (stating that under the Third Restatement, "the existence of a duty generally would be presumed as long as the plaintiff has alleged that he or she was harmed by the defendant's conduct").

¶59        The Third Restatement also provides that foreseeability is not a factor in determining duty.  Third Restatement § 7 cmt. j.  However, like *Gipson*, foreseeability may be used to determine breach and causation.  *See id.* § 7 cmt. j and Reporter's Note to cmt. j (breach); *id.* § 29 cmt. j and Reporter's Note to cmt. j (causation).

¶60        Unfortunately, by eliminating foreseeability and replacing it with risk creation, the Third Restatement only generates more confusion because, as a practical matter, the two concepts are so similar they are difficult to distinguish.  Foreseeability recognizes a duty when a defendant realizes or should realize that he has created an unreasonable risk of harm to a "foreseeable plaintiff." *See supra* ¶ 8.  Similarly, under the Third Restatement, risk creation establishes that a duty exists when a defendant's conduct creates an unreasonable risk of harm to a plaintiff.  *See supra* ¶¶ 52, 55–56; *see also* W. Jonathan Cardi & Michael D. Green, *Duty Wars*, 81 S. Cal. L. Rev. 671, 724–25 (2008) (remarking that, to the extent one owes a duty to avoid creating a foreseeable risk of harm to others, "[a]s a practical matter, such a limited use of foreseeability may not be much of a departure from the Third Restatement's basic risk-creation standard. Although the Third Restatement would impose a duty even where the risk created by a defendant's conduct was not foreseeable, most conduct in fact creates some foreseeable risk.").

¶61        Conceptually, however, there is one very important difference between foreseeability and risk creation.  While foreseeability limits duty to foreseeable plaintiffs who are in the "zone of danger," risk creation gives rise to a vastly broader duty encompassing both foreseeable plaintiffs and *unforeseeable* plaintiffs who may or may not be within the "zone of danger."  *See* Third Restatement § 7 Reporter's Note to cmt. j (stating that under the Third Restatement, "[s]o long as the actor's conduct created a risk of harm," which is "the predicate for a duty" under § 7, then "foreseeability has no role" in determining whether a duty exists).

## B. Duty Under Arizona Law

**¶62**		Arizona has not adopted the Third Restatement duty framework. *See Alcombrack*, 238 Ariz. at 542 ¶ 11 (declining to adopt § 7); *Delci*, 229 Ariz. at 337 ¶ 15 (same); *but see Diaz*, 224 Ariz. at 340 ¶¶ 21–22 (deriving guidance from, but not adopting, the Third Restatement's duty framework). In fact, to date, only two jurisdictions have adopted Third Restatement § 7. *See Thompson v. Kaczinski*, 774 N.W.2d 829, 839 (Iowa 2009); *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 784 N.W.2d 907, 918 (Neb. 2010); *cf. Kesner*, 384 P.3d at 304 (adopting the Third Restatement's duty framework but using foreseeability as a factor in determining duty). At least one court outside Arizona has expressly rejected it. *See Riedel*, 968 A.2d at 21.

**¶63**		The Third Restatement's duty framework uses a "different conceptual approach" than Arizona's. *Gipson*, 214 Ariz. at 147–48 ¶¶ 33–35 (Hurwitz, J., concurring). Undeniably, there are major differences between the Third Restatement's duty framework and Arizona's framework. In contrast to the Third Restatement, Arizona does not use risk creation to determine duty. Instead, with the elimination of foreseeability, we base duty solely on special relationships and public policy. *See supra* ¶¶ 11–12, 14. And, unlike the Third Restatement, we determine duty *before* a defendant, by his acts or omissions, places a plaintiff at risk of physical injury. *See supra* ¶¶ 14–15, 25–45; *see also Petolicchio v. Santa Cruz Cty. Fair & Rodeo Ass'n*, 177 Ariz. 256, 261 (1994) ("The question is whether the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff." (quoting *Markowitz*, 146 Ariz. at 356)). Additionally, Arizona does not presume duty; rather, in every negligence case, the plaintiff bears the burden of proving the existence of a duty. *Gipson*, 214 Ariz. at 143 ¶ 9; *Vasquez*, 220 Ariz. at 311 ¶ 21.

**¶64**		None of the cases cited by the Family or the dissent support their contention that Arizona, like the Third Restatement, presumes a duty when a defendant creates a risk of harm. The Family's reliance on *Ontiveros* for this proposition is misplaced. In *Ontiveros*, we addressed the harm caused by drunk drivers and noted that courts from other jurisdictions had also expressed concerns about this problem. 136 Ariz. at 508–09. In this context, we referenced the following statement made by the Alaska Supreme Court in *Nazareno v. Urie,* 638 P.2d 671 (Alaska 1981): "a vendor is under a duty not to sell liquor where the sale creates a risk of harm to the

customer or to others. This conclusion flows from general principles of negligence law; every person is under a duty to avoid creating situations which pose an unreasonable risk of harm to others." *Ontiveros*, 136 Ariz. at 509 (quoting *Nazareno,* 638 P.2d at 674 ); *see also Nunez v. Prof'l Transit Mgmt. of Tucson Inc.*, 229 Ariz. 117, 121 ¶ 17 (2012) (quoting *Ontiveros*, 136 Ariz. at 509).

¶65 *Ontiveros*'s citation to *Nazareno* should not be read out of context. *Ontiveros* did not recognize the existence of a presumed duty based on risk creation. Rather, *Ontiveros* addressed the issue of duty by using Arizona's well-established duty framework: special relationships and public policy. Thus, *Ontiveros* held that, based on a statute, a duty existed on public policy grounds. 136 Ariz. at 509–11. In addition, *Ontiveros* recognized a duty based on the special relationship existing between a licensee and a patron. We stated that "[d]uty is a concept which arises out of the recognition that *relations between individuals* may impose upon one a legal obligation for the benefit of the other," and that "changing social conditions require recognition of a duty which extends to innocent third parties and which is *based on the relation of the licensed supplier of liquor and his patron*." *Id*. at 508 (emphasis added). We emphasized that such a duty is based on "the obligation of a licensee to help control the conduct of others who are patrons of his establishment. *Such duties are recognized where a special relationship exists between the actor and the third person*." *Id.* at 511 n.4 (emphasis added) (citation and internal quotation marks omitted).

¶66 The Family also conflates cases recognizing a duty based on a negligent undertaking with the Third Restatement's risk-creation framework. A duty based on a negligent undertaking does not arise solely because a defendant committed an act that might harm someone. Rather, a duty based on a negligent undertaking exists when a person, who otherwise owed no duty to plaintiff, voluntarily agrees to provide services for another person; under such circumstances, the person assumes a duty to exercise reasonable care in providing those services. Second Restatement § 323.

¶67 Thus, in *Stanley*, we held that a radiologist paid by an employer to review a job applicant's x-rays for a pre-employment exam assumed a duty of reasonable care to the applicant in reading her x-rays. 208 Ariz. at 223–24 ¶¶ 14–15. Similarly, in *Grimm v. Arizona Board of Pardons and Paroles*, 115 Ariz. 260, 267 (1977), this Court held that a state agency

22

assumed a duty, pursuant to a statute, to protect the public from highly dangerous persons released from prison custody. We reached a similar result in *Cummings v. Henninger*, 28 Ariz. 207, 211–12, 214 (1925). There, a business owner built a sidewalk in front of his business and for ten years maintained sole responsibility for repairing it. *Id.* at 209–10. When a traveler fell and was injured on the sidewalk, we held that by "[h]is voluntary *assumption of the undertaking*" the business owner had a duty to maintain the sidewalk in a safe condition. *Id.* at 211–12, 214 (emphasis added); *see also Alhambra Sch. Dist.*, 165 Ariz. at 42 (concluding that school assumed a duty of care by voluntarily undertaking to provide protection at a street crossing).

¶68 The Family and the dissent err by placing undue emphasis on the broad language from *Ontiveros* (the "duty to avoid creating situations which pose an unreasonable risk of harm"). *Supra* ¶ 64. As noted above, *Ontiveros* itself did not create a duty based on this language. *See supra* ¶¶ 64–65. Likewise, none of the cases cited by the Family and the dissent actually base the existence of a duty on this language. For example, in *Gipson*, we stated (in a footnote) that "one could conclude that people generally owe a duty to exercise reasonable care to avoid causing physical harm to others." 214 Ariz. at 146 ¶ 24 n.4 (citation and internal quotation marks omitted). However, we did not base the existence of a duty on risk creation; rather, we determined that duty existed based on public policy. *Id.* at 146 ¶¶ 25–26. Likewise, in *Nunez*, although we referenced the same general language from *Ontiveros*, we based the existence of duty on the special relationship existing between a common carrier and a passenger. 229 Ariz. at 121 ¶ 17; *cf. Crouse*, 77 Ariz. at 365–66 (discussing foreseeability as a factor in determining duty but basing duty on a negligent trespass).

¶69 Additionally, *Martinez v. Woodmar IV Condominiums Homeowner's Ass'n*, 189 Ariz. 206 (1997) does not, as the dissent contends, stand for the proposition that a landowner's duty is based on "its conduct irrespective of any duty to control [a] third party." *See infra* ¶ 95. Rather, *Martinez* stated that landowners' duties are *relational* and are not determined by the landowner's specific conduct in a given case. *Martinez*, 189 Ariz. at 211. Specifically, this Court held that a condominium association, as the possessor of the common areas in a condominium complex, "had a relationship, similar to that of a landlord, with unit owners, their tenants, and persons on the land with consent and permission to use the common areas," and that relationship required the condominium

association "to use reasonable care to avoid causing the injury to those it permitted to use the property under its control." *Id.* We concluded that "[t]he *relationship* between [the condominium association], its unit owners, and persons given permission to enter the common areas thus imposed an obligation on Defendant to take reasonable precautions for the latter's safety." *Id.* (emphasis added).

¶70        Finally, the dissent argues that Arizona, by adopting Second Restatement § 302, "anticipates" the risk-creation approach used by the Third Restatement. *See infra* ¶ 121. Specifically, the dissent argues that § 302 demonstrates that both the Second Restatement and the Third Restatement presume a duty exists when a defendant, by his affirmative actions, creates a risk of harm to a plaintiff. *Infra* ¶ 121.

¶71        We disagree. As a preliminary matter, § 302 addresses whether a defendant's conduct violates the standard of care (breach), not duty. *See* Second Restatement § 302 cmt. a ("This Section is concerned only with the negligent character of the actor's conduct, and not with his duty to avoid the unreasonable risk.").

¶72        But more importantly, § 302 does not, by its terms, create a *presumed* duty of care based on a defendant's affirmative acts. Rather, § 302, like all duties under the Restatement Second, hinges on proof of foreseeability. *Id.* § 302 cmt. a; *see also* Prosser & Keeton, § 43, at 285 (noting that the Restatement of Torts adopted foreseeability as a basis for duty); *see Fedie v. Travelodge Int'l, Inc.*, 162 Ariz. 263, 265–66 (App. 1989) (discussing the existence of duty based on Second Restatement §§ 302 and 302B, and noting that both sections rely on foreseeability to determine duty); *City of Tucson v. Wondergem*, 6 Ariz. App. 570, 576 (1967) (stating that Second Restatement § 302 cmt. g is based on the "doctrine of foreseeability"); *Satterfield,* 266 S.W.3d at 355 (noting that Second Restatement §§ 284 and 302 rely on foreseeability in determining duty); *see also Brown v. United States*, 514 F. Supp. 2d 146, 152–53 (D. Mass. 2007) (citing Second Restatement § 302 cmt. a as a basis for duty, stating that "[t]he duty of care derives from the foreseeability of the harm caused to others by a defendant's acts or omissions"); *Leppke v. Segura*, 632 P.2d 1057, 1059 (Colo. App. 1981) (referencing Second Restatement § 302 cmt. a as a basis for duty and holding that "[t]he duty to exercise reasonable care extends only to

foreseeable damages and injuries to foreseeable plaintiffs")[5]; *Jupin v. Kask*, 849 N.E. 2d 829, 835 (Mass. 2006) (stating that as "[a] precondition" to the duty set forth in Second Restatement § 302 cmt. a, "the risk of harm to another [must] be recognizable or foreseeable to the actor"); *cf.* Second Restatement § 314 cmt. d (referencing § 302 cmt. a and therefore, by implication, basing duty on foreseeability).

¶73        Given the fact that *Gipson* rejects foreseeability as a factor in determining duty, § 302 cannot, consistent with our law, provide a source for duty.

## C. Rejection of Third Restatement

¶74        The Third Restatement unquestionably provides a "different conceptual approach" to duty. *See supra* ¶ 63; *Gipson*, 214 Ariz. at 147–48 ¶¶ 33–35 (Hurwitz, J., concurring). Thus, by urging us to adopt the Third Restatement, the Family and the dissent are urging us to change our duty framework. For the reasons discussed below, we think such a drastic change is both unwise and unwarranted.

¶75        The primary flaw in the Third Restatement's risk-creation framework is that it effectively creates a presumed duty of care owed by all people at all times. *See supra* § II(A). It does this in two ways. First, apart from a general admonition to do nothing to create a risk of harm to "others" — which of course, encompasses almost anything that we do — the Third Restatement provides no fixed rights or obligations. Such a duty framework, however, fails to answer the difficult question underlying duty: to *whom* does a person owe a duty? Rather than answering this question, the Third Restatement avoids it by stating a duty is owed to everyone all the time.

¶76        Avoiding this issue does not resolve it. As Prosser & Keeton note, "The rule that you are to love your neighbor becomes in law, you must not injure your neighbor; and the lawyer's question, . . . . Who, then, in law is my neighbor?" Prosser & Keeton, § 53, at 358 (citation and internal quotation marks omitted). In answering this question, we cannot provide any meaningful guidance to courts and practitioners without defining the

---

[5] The annotations to Second Restatement § 302, cmt. a note that *Leppke* mistakenly cited § 320 rather than § 302. Second Restatement, case citations by jurisdiction.

rights and obligations of the parties before a plaintiff is injured. In short, we recognize that "before negligence can be predicated [on] a given act, [in] back of the act must be sought and found a duty to the individual complaining." *Palsgraf*, 162 N.E. at 99–100; *see also* Prosser & Keeton, § 53, at 356 (stating that duty is an obligation a defendant owes "for the benefit of the *particular plaintiff*" (emphasis added)); Pollock, *Law of Torts*, p. 468 (13th ed. 1920) ("[N]egligence does not exist in the abstract, it contemplates a legal duty owing from one party to another.").

¶77        Thus, in Arizona we have sought, by means of special relationships and relationships created by public policy, to define the rights and obligations of the parties *before* a defendant, by his acts or omissions, places a plaintiff at risk of physical injury. *See supra* ¶¶14–15, 63; *Markowitz*, 146 Ariz. at 356 (stating that a duty exists when "the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff"). This framework, even with its flaws, has been carefully worked out by our courts for many years and provides a workable, useful approach to determining duty.

¶78        By presuming a duty is owed to everyone, the Third Restatement eliminates duty as a separate element of a negligence claim. Under the risk-creation framework, duty exists whenever a plaintiff suffers an injury; as a result, the issue of duty is subsumed by causation. *See supra* ¶ 58. Additionally, by focusing on a person's conduct, or *how* a person acts, the Third Restatement conflates duty with the standard of care.

¶79        The dissent demonstrates this flaw in the Third Restatement approach by arguing that Reynolds owed a duty to Quiroz because the "manner" in which it "operat[ed]" its factory created a risk of exposing Quiroz to take-home asbestos. *See infra* ¶ 95. But the *manner* in which Reynolds operated its plant addresses the issue of *how* Reynolds should have acted, not whether Reynolds owed a duty to Quiroz in the first place. As Prosser & Keeton state:

> It is better to reserve "duty" for the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other, and to deal with *particular conduct* in terms of a legal standard of what is required to meet the obligation . . . . *What the defendant must*

*do, or must not do, is a question of the standard of conduct required
to satisfy the duty.*

Prosser & Keeton, § 53, at 356 (emphasis added); *see also Martinez*, 189 Ariz. at 211 (holding that duty is based on the relations between individuals and should not be equated with the specific details of a party's conduct); *Markowitz*, 146 Ariz. at 355 ("[T]he existence of a duty is not to be confused with details of the standard of conduct.").

¶80 Creating a tort law system based on a presumed duty owed by everyone all the time carries with it serious consequences. As an initial matter, limitless duties expand tort liability beyond manageable bounds.

¶81 The present case illustrates this point. Under the Third Restatement approach, Reynolds would have owed a presumed duty of care to any person that Father encountered after leaving the plant (assuming, of course, that Father was carrying asbestos fibers on his clothes). As a result, Reynolds would have owed a presumed duty of care to Father's neighbors and friends, babysitters and cab drivers, waiters and bartenders, dentists and physicians, and fellow church members. If the asbestos fibers were transferred to the clothes of Father's children, then the presumed duty of care would have extended to the children's playmates, schoolmates, and teachers. And of course, if each person contacted by Father or his family members transferred asbestos fibers to other third parties, then Reynolds' presumed duty would have expanded to an even wider circle of potential plaintiffs.

¶82 Other courts addressing take-home asbestos illustrate these concerns about the limitless scope of such a duty. For example, *Satterfield*, which adopted the Third Restatement duty approach in combination with foreseeability, acknowledged that an employer's liability for take-home asbestos would extend "to those who regularly and repeatedly come into close contact with an employee's contaminated work clothes over an extended period of time, regardless of whether they live in the employee's home or are a family member." 266 S.W.3d at 374; *see also In re Certified Question from the Fourteenth Dist. Ct. of App. of Tex.*, 740 N.W.2d 206, 219–21 (Mich. 2007) (expressing concern that recognizing an employer's duty for take-home asbestos would expose an employer to a "limitless pool of plaintiffs" encompassing anyone who came into contact with an employee while he was wearing his work clothes); *In re New York City Asbestos Litig.*,

840 N.E. 2d 115, 122 (N.Y. 2005) (stating that finding duty in take-home asbestos cases would create "limitless liability" for employers, extending duty to a babysitter or laundry worker who washes the employee's clothes).

¶83        The dissent contends, however, that adopting the Third Restatement would not lead to limitless liability because § 7(b) allows courts to create "no-duty" rules. *See infra* ¶ 115. While true, the burden of proving a no-duty rule rests squarely on the shoulders of the defendant. Moreover, defendants seeking relief from the presumed duty of care face a daunting task; they must convince a court that, in their cases, a no-duty rule is justified based on "general social norms of responsibility" and the "overall social impact" of imposing such a no-duty rule. *See supra* ¶ 53. Moreover, such a procedure is at odds with the judicial restraint we exercise in declaring public policy. *See supra* ¶¶ 18–19.

¶84        The dissent also claims that even with a presumed duty, a plaintiff must still prove breach and causation to impose liability on a defendant. *See infra* ¶ 115. Of course, this ignores the fact the Third Restatement creates a limitless *duty* owed by a defendant to the whole world. As Prosser & Keeton note, "[Duty] is embedded far too firmly in our law to be discarded, and no satisfactory substitute for it, by which the defendant's responsibility may be limited, has been devised." Prosser & Keeton, § 53, at 358. Plainly, presuming duty effectively creates the risk of unlimited liability because "[i]t throws the question of any limitation back into the morass of 'proximate cause' and the search for some reasonably close connection between the defendant's conduct and the injury." *Id*. § 43 at 287; *see also* Third Restatement § 29 and cmts. a and f (stating that apart from creating a no-duty rule under § 7(b), factual cause, formerly known as proximate cause, is the Third Restatement's means of limiting a defendant's liability).

¶85        The Third Restatement's limitless duty also distorts the tort law's goals of compensating injured parties and deterring negligent conduct. *See* Prosser & Keeton, § 4, at 20–26. Unlike the Third Restatement approach, we have never held that every defendant is automatically subject to tort liability whenever its negligence causes an injury to a plaintiff. Rather, before a plaintiff can seek compensation from a defendant, he must first show the defendant owed him a duty to prevent or avoid the injury in the first place. *Markowitz*, 146 Ariz. at 356; *see Hafner v. Beck*, 185 Ariz. 389, 391 (App. 1995) ("One who engages in negligent conduct is not

28

automatically subject to potential legal liability. Rather, there first must be a duty recognized by law."); *see also Palsgraf*, 162 N.E. at 99–101 ("Proof of negligence in the air, so to speak, will not do. . . . One who seeks redress at law does not make out a cause of action" by merely showing he has been injured, or that another has engaged in wrongful conduct; rather, "plaintiff must show . . . 'a wrong' to herself; i.e., a violation of her own right, and not merely a wrong to some one else, nor conduct 'wrongful' because unsocial, but not 'a wrong' to any one." (internal citation and quotation marks omitted)).

¶86      Similarly, imposing a limitless tort duty on society may well deter negligent behavior, but it leaves little room for individual liberty and personal autonomy. Under such a framework, there are no fixed rights or duties prescribing a person's responsibilities *before* they act. Rather, every act a person or business engages in exposes them to tort liability.

¶87      The dissent contends, however, that the Third Restatement's duty framework reflects "the common law understanding of duty." *Infra* ¶ 129. In support of this assertion, it offers the hypothetical case of a person swinging a golf club. According to the dissent, when a person swings a golf club, such an action creates a duty "to persons thereby exposed to the risk of physical injury." *See infra* ¶ 94.

¶88      We agree a duty exists, but not based on the Third Restatement's concept of risk creation. Rather, a duty exists based on either a special relationship or a public-policy-created relationship between the golfer and those within reach of his club.[6] One does not have to look far to

---

[6] To the extent the hypothetical reflects the "common law understanding of duty," such an understanding would, of course, incorporate the concept of foreseeability in determining the existence of a duty. However, because the Third Restatement relies solely on risk creation and it prohibits using foreseeability to determine duty, the act of swinging a golf club would give rise to a duty that was not contemplated by the common law. Specifically, the hypothetical presumes a duty exists as to unforeseeable plaintiffs outside the zone of danger of the golf club, e.g., a duty owed to a plaintiff ten miles away. *See supra* ¶¶ 8, 59–60; Third Restatement § 7 cmt. j. In short, unlike the common law, the Third Restatement would presume a limitless duty exists to everyone simply because the defendant started swinging a golf club.

find a criminal statute prohibiting a person from recklessly assaulting strangers with a dangerous instrument. *See* A.R.S. § 13-1203(A) (stating it is a crime to assault another person); A.R.S. § 13-1204(A)(2) (stating it is a felony offense to assault a person with a dangerous instrument); *see also* A.R.S. § 13-105(12) (defining "dangerous instrument").

¶89　　　　　Of course, it would be "simpler" if everyone owed a legal duty of care to all people at all times. Doubtless, if such a general duty existed, courts would not have to grapple with the issue of duty at all. But "[l]ife will have to be made over, and human nature transformed" before such a duty could "be accepted as the norm of conduct, the customary standard to which behavior must conform." *Palsgraf*, 162 N.E. at 100. Such a limitless duty framework is impractical, unmanageable, and has never been the law in this state. We therefore reject the Third Restatement approach.

**CONCLUSION**

¶90　　　　　We hold Reynolds had no duty to protect Quiroz from exposure to take-home asbestos. No special relationship existed between Reynolds and Quiroz, and no duty existed based on public policy. Additionally, because we reject the duty framework contained in the Third Restatement, no duty exists on that basis. As a result, although we agree with the court of appeals' ultimate holding, because we disagree, in part, with its reasoning, we vacate its opinion. We affirm the superior court's grant of summary judgment in favor of Reynolds.

QUIROZ v. ALCOA
CHIEF JUSTICE BALES, joined by VICE CHIEF JUSTICE PELANDER, as
to Parts I and II, dissenting

BALES, C.J., joined by PELANDER, V.C.J., as to parts I and II, dissenting:

¶91          The majority holds that an employer who knew its workers were being exposed to toxic asbestos dust on the job and failed to warn them or provide reasonable protective measures, such as overalls, showers, or changing facilities, owed no duty of care to children who developed mesothelioma from dust carried home in their parents' work clothes. Although the employer created the risk of physical harm - and failed to warn its employees or the persons ultimately injured - the majority concludes that the employer must be immunized from even the prospect of liability, no matter how reckless or otherwise unreasonable its conduct may have been.   This result, the majority contends, serves to protect the employer's "individual liberty." *Supra* ¶ 86.  One would think the children had a greater right to be free from others unreasonably exposing them to risks of debilitating and life-threatening illness.

¶92          Our tort law generally does not privilege those who expose others to unreasonable risks of physical injury, but instead seeks to compensate those who are harmed by such conduct.  Recognizing a duty here - which does not mean that the employer is necessarily liable or that all persons owe a duty to others at all times - comports with Arizona caselaw, § 371 of the Second Restatement, and § 7 of the Third Restatement. Accordingly, I respectfully dissent.

**I.**

¶93          Arizona courts routinely discuss two sources of duty: special relationships and public policy.  Although the majority strains to narrowly delimit these sources, this Court has defined both broadly.  *See Gipson v. Kasey*, 214 Ariz. 141, 145 ¶ 18 (2007) ("Duties of care may arise from special relationships based on contract, family relations, or conduct undertaken by the defendant."); *Stanley v. McCarver*, 208 Ariz. 219, 226 ¶ 22 (2004) ("[D]uty emanates from the panoply of social concerns that generally inform tort law."); *id.* at 221 ¶ 6 ("To determine whether a duty exists, courts examine several sources, including the state's statutes and controlling cases."); *Ontiveros v. Borak*, 136 Ariz. 500, 508 (1983) (observing that "duty" essentially is "an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to

QUIROZ v. ALCOA
CHIEF JUSTICE BALES, joined by VICE CHIEF JUSTICE PELANDER, as
to Parts I and II, dissenting

protection" (quoting W. Prosser, *Handbook on the Law of Torts* § 53, at 324-27 (4th ed. 1971))).

**¶94** As a general rule, an actor owes a duty of reasonable care when engaging in activities that expose others to risks of physical harm. *See* Restatement (Second) of Torts § 302 cmt. a (Am. Law Inst. 1965) ("Second Restatement") (noting duty to refrain from affirmative acts that involve an unreasonable risk of harm to another). If an individual "acts at all, [he or she] must exercise reasonable care to make his [or her] acts safe for others." *Id*. § 4 cmt. b. But our tort law imposes duties more narrowly with regard to protecting persons from risks created by others. *See id*. § 315 (noting there is no duty to control a third person to prevent physical harm absent circumstances, including special relationships, that may give rise to duty of control or right of protection). This distinction is illustrated by a simple example: a person swinging a golf club while walking on a sidewalk owes a duty of care to persons thereby exposed to the risk of physical injury. But a bystander would generally not have any duty to warn or otherwise protect others from the person swinging the club absent some special relationship giving rise to a right to protection.

**¶95** The majority errs by refusing to recognize that the risk of physical injury here was created by the employer's manner of operating its factory - exposing its workers without warning to toxic asbestos dust and failing to provide any workplace protective measures, which resulted in the diffusion of the dust beyond the employer's premises. The employer's own risk-creating conduct suffices to create a duty of care, regardless whether the employer may have otherwise been in a "special relationship" with the injured parties that gave them a right to protection from risks created by third parties. *See Martinez v. Woodmar IV Condominiums Homeowners Ass'n*, 189 Ariz. 206, 208 (1997) (recognizing duty of possessor of land with respect to its conduct irrespective of any duty to control third party); *see also Cummings v. Henninger*, 28 Ariz. 207, 214 (1925) (recognizing a person's "duty to exercise due care to afford reasonable protection" in "regulating his conduct in the many contacts he makes in his daily life with his fellow-creatures"); Second Restatement § 314 cmt. d (recognizing that when peril results from forces under actor's control, a duty to act to protect another does not require special relationship).

QUIROZ v. ALCOA
CHIEF JUSTICE BALES, joined by VICE CHIEF JUSTICE PELANDER, as
to Parts I and II, dissenting

**II.**

**¶96**        Recognizing the employer's potential liability here comports with both this Court's caselaw and § 371 of the Second Restatement. This Court has long recognized that a landowner owes a duty to individuals off-premises who may be harmed by the landowner's on-premises activity.

**¶97**        For example, in *Crouse*, the Court recognized that a cotton farmer owed a duty of care to not harm a neighboring farmer's cantaloupe fields when crop dusting his cotton fields. *Crouse v. Wilbur-Ellis Co.*, 77 Ariz. 359, 365-66 (1954). The cotton farmer's prospective liability, the Court held, was a sufficient risk of harm to justify imposing a duty of care on the insecticide supplier that advised the cotton farmer on the dusting. *Id.* *Crouse* observed:

> The whole modern law of negligence, with its many developments, enforces the duty of fellow-citizens to observe in varying circumstances an appropriate measure of prudence to avoid causing harm to one another. The situations in which we are under no such duty appear at this day not as normal, but as exceptional. A man cannot keep shop or walk into the street without being entitled to expect and bound to practice observances in this kind.

77 Ariz. at 365 (quoting P.A. Landon, *Pollock's Law of Torts* 17 (15th ed. 1951)).

**¶98**        Then, in *Carver*, this Court adopted § 364 of the Second Restatement, which states that "[a] possessor of land is subject to liability to others outside the land for physical harm caused by a structure or other artificial condition on the land, which the possessor realizes or should realize will involve an unreasonable risk of such harm." *Carver v. Salt River Valley Water Users' Ass'n*, 104 Ariz. 513, 517 (1969). Viewing *Crouse* and *Carver* together, this Court has recognized that landowners owe a duty of care to others off their property - whether harmed by artificial conditions or activity occurring on the landowner's premises.

QUIROZ v. ALCOA
CHIEF JUSTICE BALES, joined by VICE CHIEF JUSTICE PELANDER, as
to Parts I and II, dissenting

¶99          Furthermore, in *MacNeil*, the Court extended the attractive nuisance doctrine to encompass children injured off the landowner's property. *MacNeil v. Perkins*, 84 Ariz. 74, 78-79 (1958). There, two children-trespassers removed dynamite caps from a mine on the landowner's property and were later injured by a creek when they set the caps on fire. *Id.* A third child, who did not participate in the trespassing and taking of the dynamite caps, was also injured in the explosion. *Id.* The Court held that the intervention of the children carrying the dynamite caps and giving them to a third child did not defeat the landowner's liability. *Id.* at 83-84. Although dealing with the attractive nuisance doctrine, *MacNeil* illustrates that a landowner's duty of reasonable care can extend to third parties injured when entrants remove and transport the landowner's risk of harm off-premises. *See id.* at 84-85 (approving jury instructions characterizing attractive nuisance as a form of negligence).

¶100          Lastly, in the most factually analogous situation to this case, our court of appeals recognized a landowner's duty to persons harmed by asbestos carried off the landowner's land. In *Burns*, residents of a trailer park sued a landowner for personal injuries and property damage based on theories of negligence, strict liability, and nuisance because the wind blew asbestos fibers from the landowner's mill onto a trailer park, thereby exposing the residents to asbestos. *Burns v. Jaquays Mining Corp.*, 156 Ariz. 375, 376-77 (App. 1987). None of the plaintiffs had been diagnosed as having asbestosis, and the trial court granted summary judgment on all counts except one seeking property damages. *Id.* at 377. The court of appeals affirmed the dismissal of the negligence claims because the plaintiffs had not manifested bodily injuries, while reversing summary judgment on nuisance claims seeking damages for the "disruption and inconvenience" caused by the asbestos contamination and a claim for damages for medical monitoring. *Id.* 378-80.

¶101          The majority attempts to discount *Burns* by observing that the decision addressed damages; the "court never determined, expressly or impliedly, that the mill owner owed a duty to the residents as to airborne asbestos," and that negligence claims are distinct from nuisance claims. *Supra* ¶ 34. These arguments misapprehend the significance of *Burns*. The court of appeals upheld the claim for damages for medical monitoring, and such a claim presumes a duty of reasonable care by the mill operator, whether the claim is based on negligence or nuisance. *Burns* did not specify

QUIROZ v. ALCOA
CHIEF JUSTICE BALES, joined by VICE CHIEF JUSTICE PELANDER, as
to Parts I and II, dissenting

the basis for the medical monitoring damages, but such a claim generally is grounded in the defendant's negligence. *See In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 852 (3d Cir. 1990); *Hanson v. Mountain Fuel Supply Co.*, 858 P.2d 970, 979 (Utah 1993).

¶102    But even if *Burns* approved recovery for medical monitoring based on the mill operator's creating a nuisance, a claim for nuisance reflects the duty of a possessor of land to "[s]o use your own property as not to injure the rights of another." *United Verde Extension Mining Co. v. Ralston*, 37 Ariz. 554, 561 (1931) (internal quotations and citation omitted). Consistent with this observation, our nuisance cases have long recognized that possessors of land may be liable for conduct on their property that unreasonably invades others' use and enjoyment of their land. *Id.* (affirming damages from discharge of smelter smoke and poisonous gases carried by wind to other property); *see also Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Ariz.*, 148 Ariz. 1, 7 (1985) (noting that "the law requires our neighbors to keep their activities within the limits of what is tolerable by a reasonable person"); Second Restatement § 822 (recognizing nuisance liability for unintentional invasions of another's use of property if "otherwise actionable under the rules controlling liability for negligence or reckless conduct").

¶103    This litany of cases demonstrates that Arizona law has expressly acknowledged that a landowner's duty of care does not just encompass those who are on his or her premises or otherwise have some "special relationship" to the landowner. Rather, such a duty can extend to persons injured off the landowner's property, whether or not the landowner had some pre-existing "special relationship" with them other than the conduct creating the risk of harm.

¶104    The majority unconvincingly seeks to distinguish these cases based on the nature of the parties or their claims, *supra* ¶¶ 34-39, or to discount them as basing duty on foreseeability. Pre-*Gipson* cases such as *Crouse* often conflate discussions of duty with the standard of care (which frequently turns on foreseeability), but that fact does not support denying the existence of duty, but instead recognizing that "[d]uty in a given situation is commensurate with the dangers involved." *Crouse*, 77 Ariz. at 365. The duties recognized in *Crouse* did not evaporate when *Gipson* clarified that foreseeability does not determine whether a defendant may

QUIROZ v. ALCOA
CHIEF JUSTICE BALES, joined by VICE CHIEF JUSTICE PELANDER, as
to Parts I and II, dissenting

ever be liable for unreasonably creating risks of harm (the "duty" question), but instead concerns whether a particular defendant acted unreasonably (failed to meet the standard of care) or proximately caused injury.

¶105 The majority discounts *Carver* as turning on the "right" to safe travel on public highways, *supra* ¶ 39, but does not explain why there is no "right" to be free from being unreasonably (and unknowingly) exposed to lethal risks within one's home rather than the highway. (Of course, the duty to drive with reasonable care applies even when one drives on private property, such as a shopping center parking lot, and is not limited to those with whom the driver has a "special relationship" or to the driver's complying with traffic laws.) And even if a duty of care here must be grounded on public policy, that requirement is met by Arizona's longstanding common law principle that persons must act reasonably when they create risks of physical injury to others, *see, e.g., Nunez v. Prof'l Transit Mgmt. of Tucson, Inc.*, 229 Ariz. 117, 121 ¶ 17 (2012); *Cummings*, 28 Ariz. at 214, a policy that is also reflected in our state constitution's protecting the right to recover damages for injuries and limiting defenses that effectively relieve a defendant of any duty of care, *see* Ariz. Const. art. 18, §§ 5, 6; *1800 Ocotillo, LLC v. WLB Grp., Inc.*, 219 Ariz. 200, 205-06 ¶¶ 22-31 (2008) (discussing purpose of article 18, section 5).

¶106 Arizona's case law recognizing a landowner's duty to those injured by on-premises activity is consistent with § 371 of the Second Restatement, which also supports imposing potential liability on Reynolds. Section 371 provides:

> A possessor of land is subject to liability for physical harm to others outside of the land caused by an activity carried on by him thereon which he realizes or should realize will involve an unreasonable risk of physical harm to them under the same conditions as though the activity were carried on at a neutral place.

¶107 Nothing about § 371 is novel. Rather, it reflects a long-accepted common law rule that a landowner's duty of care extends to others off the land who are physically harmed by activity occurring on the land. As Prosser and Keeton note:

QUIROZ v. ALCOA
CHIEF JUSTICE BALES, joined by VICE CHIEF JUSTICE PELANDER, as
to Parts I and II, dissenting

> The possessor of land is first of all required to exercise reasonable care, with regard to any activities which he carries on, for the protection of those outside of his premises. He may be liable if he blows a whistle where it will frighten horses in the street, or operates a barrel hoist which is dangerous to adjoining property, or runs a factory so that it gives out unnecessary noise or smoke.

Prosser & Keeton, *The Law of Torts* § 57, at 387 (5th ed. 1984); *see also* Richard A. Epstein, *Torts* § 12.1, at 310 (1999) (discussing a landowner's duty of care for any dangerous, artificial conditions on his premises "whose consequences spill over beyond the boundaries of the property"). In fact, the principles underlying § 371 are reiterated throughout the Second Restatement. *See, e.g.*, Second Restatement § 302 cmt. c., illus. 1 ("A sets a fire on his own land, with a strong wind blowing towards B's house. Without any other negligence on the part of A, the fire escapes from A's land and burns down B's house. A may be found negligent toward B in setting the fire."). Thus, at common law, a landowner's duty of care did not end at his property line.

¶108   Section 371 and the common law reflect common sense. If Dottie played baseball on her property and hit Kit, Dottie's duty of care should not be defeated simply because Kit was not on Dottie's property. *See* Richard A. Epstein, *Torts* § 12.1, at 310 (1999) ("Thus if D allows baseball to be played on his land, then liability for negligence may attach if insufficient precautions are taken to keep the ball from leaving the field."). Although a landowner may use his land for his own benefit, this privilege is "bounded by principles of reasonableness." *See* Prosser & Keeton, *supra* ¶ 107, § 57 at 386. One owes a duty to exercise reasonable care when engaging in activity on one's property. *Id.*

¶109   Just as Reynolds owes a duty of care to ensure that the wind does not blow asbestos dust from its factory to Quiroz's home, Reynolds should likewise owe a duty of care to ensure that its employees do not carry the asbestos dust there. *See* Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, *The Law of Torts* § 272 (2d ed. 2011) (observing that the idea reflected in § 371 "justifies liability for negligently allowing workers on the land to carry dangerous substances like asbestos dust off the land to the injury of others"); *cf. MacNeil*, 84 Ariz. at 84 (holding that landowner's duty

QUIROZ v. ALCOA
CHIEF JUSTICE BALES, joined by VICE CHIEF JUSTICE PELANDER, as
to Parts I and II, dissenting

extends to third parties injured when entrants remove and transport the risk of harm off-premises). In fact, recognizing such a duty may make more sense because Reynolds might more easily control the diffusion of asbestos off-premises by its employees than by shifting air currents.

¶110        Quiroz does not seek to impose a duty on Reynolds to control a third party; nor does he seek to impose a broad duty owed by Reynolds to the public at large. Reynolds's relevant conduct was releasing asbestos and not containing it within its facility. Based on the summary judgment record before us, Reynolds failed to even warn its workers, much less afford them a means to prevent their carrying home asbestos dust in their clothing. Thus, the determination of liability should not turn on whether the injury was caused by wind-borne asbestos, employee-borne asbestos, or an errant fly ball; a landowner owes a duty of care when it exposes others to risks of injury, even when the harm occurs off-premises, and may be liable under § 371 if a plaintiff establishes that section's prerequisites.

¶111        The majority observes that § 371 "does not . . . create . . . a general duty on landowners for off-premises injuries." *Supra* ¶ 43. To be sure, § 371 does not itself create an independent source of duty; rather, it clarifies that those in possession of land have the same liability to others for their activities on that land as they would have if those activities were conducted in a neutral place, such as a highway. *See* Second Restatement § 371 cmt. a. That is, liability in these circumstances flows not from one's status as a landowner but from conduct creating an unreasonable risk of physical injury that proximately causes injury. For example, a landowner whose on-site activity unreasonably releases toxic waste that injures others off-site is liable just as the landowner would be for releasing it while transporting it on a public highway. (The cases from "other jurisdictions" cited by the majority, *supra* ¶ 49, do not consider § 371.)

¶112        The majority errs by arguing that § 371 cannot support the imposition of liability on Reynolds because the Second Restatement bases duty on foreseeability and *Gipson* rejected that approach. *Supra* ¶¶ 42-43. Duty under the Second Restatement does not depend on foreseeability; instead, people generally are under a duty of care with respect to their affirmative acts. *Supra* ¶ 94. That "duty" imposes a standard of care, i.e., acting as a reasonable person with respect to recognizable risks. *See* Second Restatement § 291. Under the Second Restatement, whether a risk is

QUIROZ v. ALCOA
CHIEF JUSTICE BALES, joined by VICE CHIEF JUSTICE PELANDER, as
to Parts I and II, dissenting

foreseeable does not determine whether the actor owes such a duty of care, but instead whether conduct is negligent. *Id*. § 284(a) (defining negligent conduct as "an act . . . a reasonable man should recognize as involving an unreasonable risk of causing an invasion of an interest of another"). Failing to act reasonably with respect to foreseeable risks (those recognizable by a reasonable person) is negligence under the terminology of the Second Restatement. *Id*. §§ 282, 284(a). But "[c]onduct which is negligent in character does not result in liability unless there is a duty owed by the actor to the other not to be negligent." Second Restatement ch. 12, topic 4, scope note.

¶113        Various provisions of the Second Restatement define circumstances where "liability" may be imposed for negligent conduct. *See, e.g.*, Second Restatement § 364 (liability of possessor of land for dangerous artificial conditions on land). The majority mistakenly suggests that such provisions base duty on the foreseeability of harm. *Supra* ¶¶ 36, 42-43. Such provisions instead presuppose that a duty exists (that is, an actor may be liable for acting negligently) and either specify the standard of care (e.g., a possessor must not create artificial conditions that foreseeably involve an unreasonable risk of harm) or identify those whose injuries will be viewed as proximately caused by any breach. *See* Restatement (Third) of Torts: Physical & Emotional Harm § 54, cmt. a (Am. Law Inst. 2010) ("Third Restatement") (noting that because Restatement Second §§ 364 and 366 "were not phrased in terms of duty but instead provided the conditions for liability, they also incorporate concerns about the foreseeable risk and burden of precaution").

¶114        By rejecting foreseeability as a basis for duty, *Gipson* is consistent with the Second Restatement in distinguishing an actor's negligence (acting unreasonably in the face of foreseeable risks) from whether a defendant owes a duty of care. *See Gipson*, 214 Ariz. at 144 ¶ 17. Rather than narrowing the circumstances in which duties exist, *Gipson* recognized that foreseeability should be assessed by the fact finder in evaluating if conduct was negligent and not by the court in determining whether a defendant owed any duty of care. *Id*. The majority's analysis, unfortunately, obscures the distinctions between duty, the standard of care, and negligence, and it unnecessarily questions whether liability may exist under various provisions of the Second Restatement. *See supra* ¶¶ 36, 38, 41. Cases like *Carver* and its adoption of Second Restatement § 364 would

QUIROZ v. ALCOA
CHIEF JUSTICE BALES, joined by VICE CHIEF JUSTICE PELANDER, as
to Parts I and II, dissenting

more appropriately be recharacterized, in light of *Gipson*, as reflecting that foreseeability, while not determinative of duty, may support a finding of negligence and thus liability.

**¶115** Recognizing a duty owed by a landowner engaging in risk-creating, on-site activity to those harmed by that activity does not lead to limitless liability for the landowner. As this Court recently noted in *Sanders v. Algers*, "Recognizing a duty . . . is not, of course, the same as saying that [a defendant] will be liable for injuries incurred . . . ." 242 Ariz. 246, 249 ¶ 13 (2017). "That a duty exists does not mean that it has been breached in any particular case or that a negligent act has proximately caused an injury." *Id*. Here, Quiroz must still demonstrate that Reynolds breached its duty and that Reynolds realized or should have realized that second-hand exposure to asbestos via an employee's clothing involved an unreasonable risk of harm.

**¶116** In sum, because our caselaw and § 371 suggest that Reynolds could be liable for the injury caused by its release of toxic asbestos beyond its property, I would reverse the trial court's entry of summary judgment.

## III.

**¶117** I also disagree with the majority's rejection of § 7 of the Third Restatement. The majority depicts this provision as radically departing from our tort law by presuming that all persons owe a duty of care to all others at all times. *See supra* ¶ 75. But § 7 does no such thing.

**¶118** Section 7 provides that "[a]n actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm" unless reasons of principle or policy dictate otherwise. Third Restatement § 7. Thus, § 7 does not state or imply that there is always a duty owed to everyone. Rather, it creates the presumption of a duty. *See* W. Jonathan Cardi & Michael D. Green, *Duty Wars*, 81 S. Cal. L. Rev. 671, 681 (2008) (remarking that the Third Restatement "adopts a default duty of reasonable care to avoid [unreasonably causing bodily injury or property damage]").

**¶119** The presumed duty under § 7 is limited to conduct creating a risk of physical harm and is expressly subject to exceptions. As § 7(b) notes,

QUIROZ v. ALCOA
CHIEF JUSTICE BALES, joined by VICE CHIEF JUSTICE PELANDER, as
to Parts I and II, dissenting

"In exceptional cases, when . . . policy warrants denying or limiting liability in a particular class of cases, a court may decide that the defendant has no duty or that the ordinary duty of reasonable care requires modification." *See also Gipson*, 214 Ariz. at 147 ¶ 35 (Hurwitz, J., concurring) ("It thus would seem to make sense for courts to view the duty of reasonable care as the norm, and depart from that norm only in those cases where public policy justifies an exception to the general rule."). This Court has recognized such exceptions when presented with sufficiently weighty policy concerns. *See, e.g., Guerra v. State*, 237 Ariz. 183, 187 ¶¶ 19, 22 (2015) (ruling that "officers do not owe a duty to a victim's family or friends by undertaking to investigate a crime or accident and identify victims" because imposing a duty "at a minimum, would cause officers to delay in making [next of kin] notifications"); *Gipson*, 214 Ariz. at 148 ¶ 37 (Hurwitz, J., concurring) ("Courts have imposed only limited duties of care upon social hosts serving alcohol because of 'staggering' economic and social consequences from adhering to the general rule of reasonable care.").

¶120 As a counterpoint to § 7, § 37 clarifies that "[a]n actor whose conduct has not created a risk of physical or emotional harm to another has no duty of care to the other unless a court determines that one of the affirmative duties provided in §§ 38-44 is applicable." Third Restatement § 37. Sections 38-44 include traditional affirmative duties based on special relationships (e.g., parent and child) and the rescue doctrine. In other words, under the Third Restatement, a person does not owe a duty of care unless his or her conduct creates a risk of physical harm or an affirmative duty applies. This is a far cry from Reynolds's contention that § 7 imposes a "free flowing general duty of care at all times to all people."

¶121 Moreover, § 7 does not depart from the Second Restatement's substantive approach. The Second Restatement states:

> In general, anyone who does an affirmative act is under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act. The duties of one who merely omits to act are more restricted, and in general are confined to situations where there is a special relation between the actor and the other which gives rise to the duty.

41

QUIROZ v. ALCOA
CHIEF JUSTICE BALES, joined by VICE CHIEF JUSTICE PELANDER, as
to Parts I and II, dissenting

Second Restatement § 302 cmt. a.  The Second Restatement's blackletter text also reflects this view, as it bases liability on, among other things, an actor's negligent conduct without separately referring to "duty."  *See* Second Restatement § 281 (listing elements of negligence cause of action). Negligent conduct in turn is defined as a person's either acting to create an unreasonable risk of harm, *id*. § 284(a), or - when "under a duty to do" so - failing to protect or assist another, *id*. § 284(b).  Thus, the Second Restatement generally presumes that people have a duty to act reasonably with respect to their affirmative acts, but liability for failing to protect another requires a duty arising from some special relationship.  *See* Second Restatement §§ 314, 315.  "Normally, where there is an affirmative act which affects the interests of another, there is a duty not to be negligent with respect to the doing of the act."  Second Restatement ch. 12, topic 4, scope note.  In this respect, the Second Restatement anticipates the Third Restatement's formulation: when engaging in affirmative conduct, the actor has a duty to exercise reasonable care so as to not harm others.  Although § 7 of the Third Restatement refines the Second Restatement by focusing on risk creation as opposed to act and omission, it does not deviate from the general principles recognized in the Second Restatement.

¶122        Section 7's focus on risk creation reflects how this Court has long examined the existence of a legal duty.  For instance, in 1925, this Court held that "[a]s a general proposition, one who voluntarily *creates* and maintains a condition for the use of others is, in the absence of some privilege, charged with the duty to exercise care to prevent that condition from becoming a source of danger to those who use it."  *Cummings*, 28 Ariz. at 212 (emphasis added).  In 1941, the Court held that an owner of property abutting a public street "owe[s] a duty to the public to do no affirmative act that will create a dangerous condition in the street fronting his property." *Cobb v. Salt River Valley Water Users' Ass'n*, 57 Ariz. 451, 454 (1941) (emphasis added).  Most recently, in 2012, the Court asserted that "[i]n general, 'every person is under a duty to avoid *creating* situations which pose an unreasonable risk of harm to others.'"  *Nunez*, 229 Ariz. at 121 ¶ 17 (citations omitted).  Thus, since 1925, this Court has consistently declared that a person owes a duty of reasonable care if his or her actions create a risk of physical harm.  Section 7 of the Third Restatement reinforces rather than contradicts this Court's precedent.

**¶123**       That a person owes a duty to abstain from negligently hurting legal strangers is not a radical or new principle.  *See Crouse*, 77 Ariz. at 365 (noting that "[t]he whole modern law of negligence, with its many developments, enforces the duty of fellow-citizens to observe in varying circumstances an appropriate measure of prudence *to avoid causing harm* to one another" (emphasis added) (quoting P.A. Landon, *Pollock's Law of Torts* 17 (15th ed. 1951)).  *See also* Dobbs et al., *supra* ¶ 109, § 251 (noting that the approach of the cases and understanding of major commentators is that "where the defendant by some action on his part, creates, maintains, or continues a risk of physical harm, the general standard of duty is the duty of reasonable care" and that "a duty of care is ordinarily owed to avoid conduct that creates risk of harm to others").  This explains why this Court recognizes a duty of care when operating an automobile even though the driver has no special relationship to the victim.  *See, e.g., Coburn v. City of Tucson*, 143 Ariz. 50, 52 (1984) (holding that "motorists have a duty to drive with reasonable care").

**¶124**       In rejecting § 7, the majority erroneously contends that it improperly relieves the plaintiff of the burden of "proving" the existence of duty; that it incorrectly bases duty on the fact of injury to a plaintiff, and that it "conflates duty with the standard of care."  *Supra* ¶¶ 52, 78.  Whether a duty exists is a question of law rather than fact, and the Third Restatement does not shift any burden of proof to the defendant, but instead states that "[a] defendant has the procedural obligation to raise the issue of whether a no-duty rule or some other modification of the ordinary duty of reasonable care applies in a particular case." Third Restatement § 7, cmt. b.  If the existence or scope of a duty turns on disputed adjudicative facts, "the plaintiff bears the burden of proof on facts necessary to establish a duty." *Id*.

**¶125**       Under § 7, the existence of a duty clearly does not turn on the fact that a plaintiff has suffered an injury.  Instead, conduct creating the risk of physical harm – antecedent to any injury – ordinarily gives rise to a duty of reasonable care.  What a defendant must do to meet that duty is the standard of care, "an issue of fact that turns on the specifics of the individual case." *Gipson*, 214 Ariz. at 143 ¶ 10.  Liability – as distinct from duty - under § 7 requires the plaintiff to prove that the defendant breached the duty of care, which requires "the factfinder [to] assess the foreseeable

QUIROZ v. ALCOA
CHIEF JUSTICE BALES, joined by VICE CHIEF JUSTICE PELANDER, as
to Parts I and II, dissenting

risk at the time of the defendant's alleged negligence." Third Restatement § 7 cmt. j.

**¶126** Section 7, consistent with *Gipson*, properly distinguishes the categorical determination of the existence of duty from case-specific findings of breach or proximate cause, which may depend on foreseeability. *See* 214 Ariz. at 144 ¶ 17; *see also A.W. v. Lancaster Cty. Sch. Dist. 0001*, 784 N.W.2d 907, 915, 917-18 (Neb. 2010) (adopting § 7 as "persuasive" and consistent with general common law rule that, "in negligence cases, the duty is always the same - to conform to the legal standard of reasonable conduct in light of the apparent risk," and stating that "placing foreseeability in the context of breach, rather than duty, properly charges the trier of fact with determining whether a particular harm was, on the facts of the case, reasonably foreseeable - although the court reserves the right to determine that the defendant did not breach its duty of reasonable care, as a matter of law, where reasonable people could not disagree about the unforeseeability of the injury"); *Behrendt v. Gulf Underwriters Ins.*, 768 N.W.2d 568, 575-76 (Wis. 2009) (noting a "clear distinction between the determinations required for duty and breach" and explaining that "[a] lack of foreseeable risk in a specific case may be a basis for a no-breach determination, but such a ruling is not a no-duty determination" (quoting Third Restatement § 7, cmt. j)). The majority unfortunately obscures these distinctions.

**¶127** The majority also misdescribes § 7 and its implications for this case by asserting that "limitless duties expand tort liability beyond manageable bounds." *Supra* ¶ 80. Accepting that Reynolds had a presumed duty of reasonable care not to expose others to asbestos released from its factory does not in itself establish liability, which would still be limited by the requirements that a plaintiff show a breach of that duty and proximately caused injuries. *See Sanders*, 242 Ariz. at 249 ¶ 13; *see also* Nicole Ward, Note, *When Laundry Becomes Deadly: Why the Extension of Duty Past Spouses in* Schwartz v. Accuratus Corp. *Holds the Right People Responsible for Take-Home Toxic Torts*, 62 Vill. L. Rev. 457, 480 (2017) (rejecting notion that extending duty in take-home asbestos cases "create[s] limitless liability"). Moreover, the scope of any presumed duty could be limited under § 7(b) and the approach this Court has taken in cases such as *Guerra*. That analysis might suggest, for example, that the duty of care in take-home asbestos cases should extend only to members of the employees' households. *Cf.*

QUIROZ v. ALCOA
CHIEF JUSTICE BALES, joined by VICE CHIEF JUSTICE PELANDER, as
to Parts I and II, dissenting

*Kesner v. Superior Court*, 384 P.3d 283 (Cal. 2016) (reaching similar conclusion under California law); *Van Fossen v. Midamerican Energy Co.*, 777 N.W.2d 689 (Iowa 2009) (relying on public policy, after having adopted § 7, in declining to recognize duty of care by power plant owner to independent contractor's spouse). Limiting the duty - or rejecting its existence all together - would require the Court to expressly articulate and assess the public policy concerns underlying its conclusion.

**¶128** By recognizing a duty to others, § 7 protects individual liberty and personal autonomy and does not impinge on those fundamental interests as the majority argues. *See supra* ¶ 86. One of the primary tasks of the law is to "prevent collision between people, and this is done affirmatively, by recognizing the autonomy of each person over his or her person, and negatively, by prohibiting the use of force or deception to compromise that autonomy." Richard A. Epstein, *The Uneasy Marriage of Utilitarian and Libertarian Thought*, 19 Quinnipiac L. Rev. 783, 786 (2000). Modern tort law provides "the legal grounds for redress of accidental harm to person and property." Richard A. Epstein, *Torts* § 3.1, at 69 (1999). Thus, § 7 preserves personal autonomy by allowing for plaintiffs to be made whole when their autonomy is violated and they are physically injured by the careless conduct of others.

**¶129** Third Restatement § 7 simply reflects the common law understanding of duty to strangers - that a person has a duty to exercise reasonable care so as not to harm others when engaging in activity that entails a risk of physical harm. Rather than reaffirm this principle, the majority seeks to restrict the recognition of duty to circumstances in which a plaintiff can demonstrate some special relationship or a statutorily based public policy. In doing so, the majority ignores "black letter law repeated by an overwhelming majority of courts: that a defendant owes a duty of care not to act in a way that creates a risk of harm to others" and risks engaging in a "pointless, confusing, and sometimes obfuscating effort[] to find a basis for a duty when a defendant created a risk of physical harm to [another]." Cardi & Green, *supra* ¶ 118, at 716, 727. Our established tort principles, and the goals of deterring careless behavior and compensating those injured by it, would be better served by recognizing that while we do not owe a duty of care to all others at all times, we do generally owe a duty to not unreasonably subject others to the risk of physical harm.